473 So.2d 1307 (1984)
Mayme BONDU, As Personal Representative of the Estate of Dave M. Bondu, Deceased, Appellant,
v.
Ruben GURVICH, M.D., Steiner & Munach, M.D., P.A., Cedars of Lebanon Hospital Care Center, Inc., a Florida Corporation, and Florida Patients Compensation Fund, Appellees.
Mayme Bondu, As Personal Representative of the Estate of Dave M. Bondu, Deceased, Appellant,
v.
Cedars of Lebanon Hospital Care Center, Inc., a Florida Corporation, and the Florida Patients Compensation Fund, Appellees.
Nos. 81-968, 81-969.
District Court of Appeal of Florida, Third District.
June 5, 1984.
Rehearing Denied August 20, 1985.
*1309 Horton, Perse & Ginsberg and Arnold R. Ginsberg; Colson & Hicks, Miami, for appellant.
Adams, Ward, Hunter, Angones & Adams and Robert C. Ward, Miami, for appellees.
Before SCHWARTZ, C.J.,[*] DANIEL S. PEARSON, J., and WILLIAM C. OWEN, Jr., Associate Judge.
DANIEL S. PEARSON, Judge.
In 1979, Dave Bondu was admitted to Cedars of Lebanon Hospital for study and evaluation of his coronary arteries. Several days later, after a determination that a triple bypass operation was required, Mr. Bondu went into surgery. At some point during the administration of anesthesia, Mr. Bondu suffered a cardiac arrest and despite a concerted and indisputably non-negligent effort by all present to save his life, died.
In 1980, Mayme Bondu, Dave's wife and the personal representative of his estate, sued the hospital, the Florida Patients' Compensation Fund (the Fund), and the anesthesiologists. In essence, her multicount complaint charged that the anesthesiologists' negligence caused the cardiac arrest; that the hospital was negligent in its selection and supervision of these anesthesiologists; and, of particular pertinence to this appeal, in Count VIII, that the hospital was negligent per se by failing, contrary to Section 395.202, Florida Statutes (1979), to provide Mrs. Bondu with requested medical records, thus "[frustrating] the plaintiff's ability to pursue certain proof which may be necessary to establish her case"; and in Count IX, that the hospital intentionally interfered with Mrs. Bondu's right of action *1310 in that it "purposely and intentionally lost and/or destroyed," among others, the anesthesiology records, again "[frustrating] the plaintiff's ability to pursue certain proof which may be necessary to establish her case."
At an early stage in the litigation, the trial court dismissed with prejudice Counts VIII and IX on the ground that these counts failed to state a cause of action. Thereafter, discovery proceedings disclosed that anesthesiology records had been made, but were nowhere to be found. Predictably, there being no record of what occurred, and, it follows, no expert testimony to establish medical malpractice, a summary judgment was entered in favor of all defendants on the remaining counts of the complaint.
Mrs. Bondu then unsuccessfully moved for a rehearing "and/or" for leave to amend her complaint to add a count charging the hospital with the negligent loss of the records causing her to lose "a medical negligence lawsuit when the plaintiff could not provide expert witnesses." At or about the same time Mrs. Bondu sought the foregoing relief, she filed a separate action against the hospital and the Fund, alleging that which she alleged in the additional count which she had sought leave to add to her earlier lawsuit. Mrs. Bondu's new action was met by the hospital's motion for judgment on the pleadings asserting that the trial court's dismissal with prejudice of Counts VIII and IX in the first suit was res judicata as to the new action. The motion for judgment on the pleadings was granted.
The present appeals, consolidated here, assail only the order denying Bondu's motion for leave to amend (Case No. 81-968) and the judgment on the pleadings (Case No. 81-969).[1] The relief sought by Bondu in these appeals is identical. In each she seeks the right to maintain an action against the hospital for its negligent loss of records which caused her to lose her medical malpractice action. Whether this action is maintained in the original or subsequent lawsuit is of no moment here. Therefore, although we conclude that because Bondu's proffered amendment to her original action (a) sets forth a cause of action (b) which is different from the counts in her earlier action, the order denying her leave to amend must be affirmed,[2] we need only note this affirmance without *1311 extended discussion, since, for the very same reason that Bondu's subsequent suit (a) sets forth a cause of action (b) which is different from the dismissed counts of her earlier action, the judgment on the pleadings must be reversed.

I.
In support of its motion for judgment on the pleadings, the hospital argued below, and argues here, that the dismissal of Counts VIII and IX of Bondu's initial complaint barred her new complaint on grounds of res judicata. It is clear, however, that a suit will be barred by res judicata (assuming that the other identity requirements of the doctrine are met) only if the cause of action previously adjudicated is identical to the cause of action later brought. See United States Gypsum Co. v. Columbia Casualty Co., 124 Fla. 633, 169 So. 532 (1936); Husky Industries, Inc. v. Griffith, 422 So.2d 996 (Fla. 5th DCA 1982); Stevens v. Len-Hal Realty, Inc., 403 So.2d 507 (Fla. 4th DCA 1981). The dismissal of Counts VIII and IX adjudicated, at most, that no cause of action lay for the hospital's failure to produce records where the alleged failure rendered the plaintiff unable to pursue certain proof which may be necessary to prove her related medical malpractice claims. The recitation in the dismissal order that "said Counts fail to state a cause of action" is presumably an adjudication that the inability to pursue certain proof which may be necessary to prove other claims is not an injury which the law recognizes, that is, that the uncertainty as to the fact of damage precludes recovery. But Mrs. Bondu's new complaint was filed after the entry of the summary judgment against her on her medical malpractice claims, when the fact of damage became certain and her cause of action ripened. The intervention of this summary judgment between the dismissal of Counts VIII and IX of the original action and the filing of the new action furnished a new basis for Mrs. Bondu's claim and makes the doctrine of res judicata inapplicable to her new action.[3] As has been stated:
"Case law abounds to the proposition that the rule of res judicata extends only to the facts and conditions as they existed at the time the judgment was rendered, or more correctly speaking, at the time the issues in the first action were made, and to the legal rights and relations of the parties as fixed by the facts determined by that judgment. When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action.... Thus the applicability of the doctrine in each case turns on the particular facts alleged in each action and the particular disposition of the allegations in the first action. Florida is in accord with this viewpoint."

Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n, 210 So.2d 750, 753-54 (Fla. 4th DCA 1968), quoted with approval in Hialeah Race Course, Inc. v. Gulfstream Racing Ass'n, 245 So.2d 625 (Fla. 1971) (emphasis supplied) (citations omitted).

II.
As we are obliged to do, see Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1980); Firestone v. Firestone, 263 So.2d 223 (Fla. 1972), we now consider whether the trial court's action in entering a judgment on the pleadings can be affirmed on a theory other than res judicata. *1312 The only other possible theory which could justify affirmance of the present judgment is that Bondu's complaint fails to state a cause of action against the hospital. See Butts v. State Farm Automobile Insurance Co., 207 So.2d 73 (Fla. 3d DCA 1968) (failure to state a cause of action is a permissible basis for a motion for judgment on the pleadings). Cf. Wittington Condominium Apartments, Inc. v. Braemar Corp., 313 So.2d 463 (Fla. 4th DCA 1975), cert. denied, 327 So.2d 31 (Fla. 1976). But because, as will be shown, the complaint states a cause of action, the judgment on the pleadings cannot stand.
It is well established that a cause of action for negligence consists of three essential elements which must be alleged and proved: (1) the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff; (2) a failure on the part of the defendant to perform that duty; and (3) an injury or damage to the plaintiff proximately caused by such failure. See Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983).
The crux of the plaintiff's action against the hospital is the failure to keep and maintain records, which failure rendered the plaintiff unable to prove the medical malpractice of the hospital and others.
To be sure, the tort alleged is not a familiar one. That fact, however, hardly prevents its being recognized by us. As we are reminded by Professor Prosser:
"New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none has been recognized before.... The law of torts is anything but static, and the limits of its development are never set. When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not of itself operate as a bar to the remedy." W. Prosser, Torts § 1, pp. 3-4 (4th ed. 1971).
See also Robertson v. Deak Perera (Miami), Inc., 396 So.2d 749, 751 (Fla. 3d DCA) (Schwartz, J., dissenting), rev. denied, 407 So.2d 1105 (Fla. 1981).
We need not, in Professor Prosser's words, strike out boldly to recognize the cause of action alleged by Mrs. Bondu. Courts before us have recognized the existence of causes of action for negligent failure to preserve evidence for civil litigation, Williams v. California, 34 Cal.3d 18, 192 Cal. Rptr. 233, 664 P.2d 137 (1983), and for intentional interference with prospective civil action by spoliation of evidence, Smith v. Superior Court, 151 Cal. App.3d 491, 198 Cal. Rptr. 829 (1984). If, as in Williams and Smith, an action for failure to preserve evidence or destruction of evidence lies against a party who has no connection to the lost prospective litigation, then, a fortiori, an action should lie against a defendant which, as here, stands to benefit by the fact that the prospect of successful litigation against it has disappeared along with the crucial evidence.
We recognize, of course, no such action can lie unless, in Prosser's words, it is "clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant," that is, there is a duty owed to the plaintiff by the defendant which the law recognizes. The hospital's duty to make and maintain medical records, including medical and surgical treatment notes and reports, is imposed by administrative regulations promulgated by Health and Rehabilitation Services:
"10D-28.59. Medical Records Department. The hospital shall have a medical records department with administrative responsibility for medical records. A current and complete medical record shall be maintained for every patient admitted for care in the hospital.
"(1) Filing  A system of identification and filing to insure the prompt location of a patient's medical record shall be maintained.

*1313 "(2) Centralization of Reports  All clinical information pertaining to a patient's stay shall be centralized in the patient's record.
"(3) Content  Medical records shall contain the original of the following information: identification data; chief complaint; present illness; past history; family history; physical examination; provisional diagnosis; clinical laboratory reports; x-ray reports; consultation reports; medical and surgical treatment notes and reports; tissue reports; physician and nurse progress notes; final diagnosis; discharge summary; and autopsy findings when performed.
"(4) Indices  Records shall be indexed according to disease, operation and physician, and shall be kept up to date." Florida Administrative Code, Ch. 10D-28 (emphasis supplied).
The hospital's duty to maintain and furnish such records to a patient or the patient's personal representative upon request (implicit in which is the duty to make such records in the first instance) is found in Section 395.202, Florida Statutes (1979),[4] which provides:
"395.202 Patient records; copies; examination. 
"(1) Any licensed hospital shall, upon request, and only after discharge of the patient, furnish to any person admitted therein for care and treatment or treated thereat, or such person's guardian, curator, personal representative, or anyone designated by such person in writing, a true and correct copy of all records in the possession of the hospital, except progress notes and consultation report sections of a psychiatric nature concerning the care and treatment performed therein by the hospital, provided the person requesting such records agrees to pay a reasonable charge for the copying of said records, and further shall allow examination of the original records in its possession, or microfilms or other suitable reproductions of the records, upon such reasonable terms as shall be imposed to assure that the records shall not be damaged, destroyed, or altered.
"(2) The provisions of this act shall not apply to any hospital whose primary function is to provide psychiatric care to its patients."
Accord, Fox v. Cohen, 84 Ill. App.3d 744, 40 Ill.Dec. 477, 406 N.E.2d 178 (1980).
Since Mrs. Bondu alleges that this duty was breached by the hospital when it failed to furnish Mr. Bondu's records to her, and that this breach caused her damage in that she lost "a medical negligence lawsuit when [she] could not provide expert witnesses," her complaint states a cause of action.[5]

III.
Therefore, for the reasons stated, the order denying the motion for leave to amend appealed in Case No. 81-968 is affirmed; the judgment on the pleadings appealed in Case No. 81-969 is reversed and the cause remanded for further proceedings consistent with this opinion.
Affirmed in part; reversed in part, and remanded.

On Motion for Rehearing
PER CURIAM.
Motion for Rehearing denied.
DANIEL S. PEARSON, J. and OWEN, WILLIAM C., Jr., Associate Judge, concur.
SCHWARTZ, Chief Judge (dissenting in part).
Upon reconsideration of the issue in the light of the motion for rehearing, I am *1314 persuaded that the tort created by the majority opinion, which arises when a failure to provide required hospital records "results" in a loss of the underlying malpractice action, should not be recognized.[1] In my view, such a rule runs counter to the basic principle that there is no cognizable independent action for perjury, or for any improper conduct even by a witness, much less by a party, in an existing lawsuit. E.g., Kessler v. Townsley, 132 Fla. 744, 182 So. 232 (1938). Were the rule otherwise, every case would be subject to constant retrials in the guise of independent actions. Thus, what the court characterizes at page seven of its opinion as an "a fortiori" situation is instead a complete non-sequitur.
Here, the court and, inferentially, the parties recognize that the malpractice action itself was properly dismissed. Any deficiency in the plaintiff's ability to prove his case there which was caused by an improper failure to provide records may, I think, be presented only in that action either, as in Valcin v. Public Health Trust, 473 So.2d 1297 (Fla. 3d DCA, opinion filed June 5, 1984; opinion on motions for clarification and rehearing filed this date) in the course of the litigation, or, if an adverse judgment has been entered as in the present circumstances, in a Rule 1.540 motion or independent action to set the judgment aside. See Lee v. State Farm Mutual Automobile Ins. Co., 303 So.2d 349 (Fla. 3d DCA 1974).
For these reasons, I would grant rehearing and affirm the judgment for the hospital.
NOTES
[*] Did not participate in oral argument.
[1] Mrs. Bondu's notice of appeal in Case No. 81-968 states that she is also appealing from the summary judgment, the denial of rehearing, and the order dismissing with prejudice Counts VIII and IX. However, her brief makes no challenge to the propriety of these actions, and we therefore consider any appeal taken therefrom to have been abandoned. See City of Miami v. Steckloff, 111 So.2d 446, 447 (Fla. 1959) ("An assigned error will be deemed to have been abandoned when it is completely omitted from the briefs"); Coleman v. Allen, 320 So.2d 864 (Fla. 1st DCA 1975), cert. denied, 336 So.2d 105 (Fla. 1976).
[2] Although a party may, with leave of court, amend a pleading at or even after a hearing and ruling on a motion for summary judgment, Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla. 1963); Roberts v. Braynon, 90 So.2d 623 (Fla. 1956); Plyser v. Hados, 388 So.2d 1284 (Fla. 3d DCA 1980), and a denial of leave to amend is an abuse of discretion where the proffered amendment indicates that the plaintiff can state a cause of action, Greenburg v. Johnston, 367 So.2d 229 (Fla. 2d DCA 1979); cf. Davis v. Sun First Nat'l Bank of Orlando, 408 So.2d 608 (Fla. 5th DCA 1981) (dicta), rev. denied, 413 So.2d 875 (Fla. 1982), if the proffered amendment pleads a cause of action different than that pleaded in the complaint, the rule authorizing amendments does not apply, United Tel. Co. v. Mayo, 345 So.2d 648, 655 n. 6 (Fla. 1977). Here, the cause of action against the hospital for its negligent loss of medical records causing the plaintiff to lose her medical malpractice action was not in being when Bondu filed her original action and in fact did not arise until the summary judgment adverse to her medical malpractice claims was entered. See Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983) (one essential element of a cause of action for negligence is an injury or damage to the plaintiff proximately caused by the defendant's failure to perform a duty recognized by law). Since it is not the function of an amendment to a pleading to cover subsequently accruing rights or "to cure the defect of non-existence of a cause of action when suit was begun," Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607, 610 (Fla. 4th DCA 1975); see also Daytona Beach Racing and Recreational Facilities Dist. v. Volusia County, 355 So.2d 175 (Fla. 1st DCA 1978), aff'd, 372 So.2d 419 (Fla. 1979), the motion for leave to amend was correctly denied.
[3] Even if the trial court's dismissal of Counts VIII and IX were deemed to be a determination that the hospital owed no duty to Bondu to maintain and furnish records, the issues posed by the new action would still not be identical so as to make res judicata applicable. Although the single issue of no duty would then have been decided adversely to Mrs. Bondu, at most her failure to appeal the dismissal ruling might collaterally estop her from bringing the new action. But the hospital's motion for judgment on the pleadings was not based on collateral estoppel, which, although related to res judicata, is not the same. See Seaboard Coast Line Railroad v. Industrial Contracting Co., 260 So.2d 860 (Fla. 4th DCA 1972); Chandler v. Chandler, 226 So.2d 697 (Fla. 4th DCA 1969).
[4] The effective date of this statute was October 1, 1978, well before Mr. Bondu's death on June 6, 1979, and the filing of Mrs. Bondu's complaint on March 10, 1980.
[5] Since Mrs. Bondu's complaint does not allege that the records were intentionally removed or destroyed, the hospital need not prove otherwise. See Valcin v. Public Health Trust of Dade County, 473 So.2d 1297 (Fla. 3d DCA 1984). However, since it is apparent that the hospital's failure to maintain the records was, at the least, negligent, the hospital will have the burden of proving that the treatment which such missing records would reflect was performed non-negligently. See Valcin v. Public Health Trust of Dade County, 473 So.2d 1297.
[1] This is an entirely different question from the effect of the loss or destruction of records upon the burden of proof in the underlying lawsuit itself, which is involved in Valcin v. Public Health Trust, 473 So.2d 1297 (Fla. 3d DCA, opinion filed, June 5, 1984; opinion on motions for clarification and rehearing filed this date).