No. 59,986

KELLY E. KOPLIN, *Plaintiff*, v. ROSEL WELL PERFORATORS, INC., *et al., Defendants.*

(734 P.2d 1177)

Opinion filed March 27, 1987.

*Michael K. Mohrman,* of Richards, Brandt, Miller & Nelson, of Salt Lake City, Utah, argued the cause, and *Mark S. Gunnison,* of McDowell, Rice & Smith, Chartered, of Kansas City, was with him on the brief for plaintiff.

*Steven D. Ruse,* of Shughart, Thomson & Kilroy, P.C., of Overland Park, argued the cause, and *Anthony F. Rupp,* of the same firm, was with him on the brief for defendant Rosel Well Perforators, Inc.

The opinion of the court was delivered by

HOLMES, J.: This case was originally filed in the United States District Court for the District of Kansas and comes to this court by certification from that court pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* The order of the certifying court meets all the requirements of the act and we accepted certification.

The order from the United States District Court provides in pertinent part:

"Pursuant to K.S.A. 60-3201 *et seq.,* this court, upon its own motion, hereby

certifies to the Kansas Supreme Court the following questions of Kansas law, which are deemed to be determinative of this action and as to which no controlling precedent exists in the decisions of the Kansas Supreme Court or Kansas Court of Appeals.

(1) Whether Kansas would recognize a common law tort action for intentional interference with a prospective civil action by spoliation of evidence?

(2) If so, whether such a cause of action against plaintiff's employer would be barred by the exclusive remedy provisions of the Kansas Workmen's Compensation Act, K.S.A. 44-501 *et seq.*?

(3) If not barred by the Workmen's Compensation Act, whether, under the facts of this case, plaintiff has sufficiently alleged such a cause of action?

"In accordance with K.S.A. 60-3203, the court sets forth the following statement of relevant facts. This case arises out of injuries suffered by the plaintiff employee in an on-the-job accident. The accident occurred when a piece of equipment called a T-clamp failed due to an alleged defect. The T-clamp was manufactured and sold to the defendant employer Rosel Well Perforators, Inc., by the defendants Gearhart Industries, Inc., Pengo Industries and Geosource, Inc. Plaintiff alleges that immediately after the accident, an agent of Rosel Well Perforators, Inc., intentionally destroyed the T-clamp so that plaintiff would no longer have access to it for purposes of potential litigation.

"Plaintiff recovered workmen's compensation benefits for his injuries. He brings this action against Gearhart Industries, Inc., Pengo Industries and Geosource, Inc., on product liability and breach of warranty claims. He also makes claims against his employer, Rosel Well Perforators, Inc., for 'interference with a prospective civil action by spoliation of evidence.' Plaintiff claims that, as a direct result of Rosel Well Perforators, Inc.'s, destruction of the T-clamp, plaintiff may be unable to produce and/or show how the T-clamp failed and caused his injuries. Thus, plaintiff contends that he has lost a valuable expectancy in recovering against Gearhart Industries, Inc., Pengo Industries and Geosource, Inc., on his product liability and breach of warranty claims.

"Rosel Well Perforators, Inc., moves to dismiss plaintiff's cause of action for interference with a prospective civil action by spoliation of evidence for failure to state a claim upon which relief can be granted. Defendant argues that plaintiff's claim for spoliation of evidence is a common law claim for damages for injuries for which plaintiff has already recovered compensation under the Kansas Workmen's Compensation Act, and that the Act provides plaintiff his sole remedy. Defendant also argues that Kansas law does not recognize an independent tort for interference with a prospective civil action by spoliation of evidence as alleged by plaintiff. Finally, defendant argues that even if Kansas law did recognize such a cause of action, the facts alleged by plaintiff would be insufficient to state a claim.

"This court determines that these questions represent significant issues of state law to which no controlling Kansas precedent exists to guide our decision. Furthermore, the court finds that these questions will be determinative of plaintiff's cause of action for the tort of spoliation of evidence against Rosel Well Perforators, Inc., and directly affects plaintiff's claims against Gearhart Industries, Inc., Pergo Industries and Geosource, Inc."

At the outset we note that this matter comes to us on the basis of the pleadings and without the benefit of any discovery. Under these circumstances, we must assume the facts stated in the plaintiff's complaint are true even though they might appear somewhat improbable and despite what may be insurmountable problems of proof. Thus, we accept plaintiff's allegations that an agent of his employer intentionally destroyed the T-clamp for the purpose of denying plaintiff access to evidence to be used in an action against the manufacturer and distributors of the T-clamp. The plaintiff describes his cause of action as being a new tort denominated as "the intentional interference with a prospective civil action by spoliation of evidence." We now turn to the question of whether this court should adopt such a cause of action by judicial decree.

Plaintiff readily concedes that the tort of spoliation of evidence is relatively new and so far as we can determine very few states have actually recognized such a tort. Absent some special relationship or duty rising by reason of an agreement, contract, statute, or other special circumstance, the general rule is that there is no duty to preserve possible evidence for another party to aid that other party in some future legal action against a third party.

First, a distinction must be made regarding the basis for a suit involving lost or destroyed evidence. Such a suit may be based upon *negligence*, wherein the plaintiff asserts the defendant negligently destroyed the evidence which impaired the plaintiff's right to sue a third party tortfeasor; or such a suit may be based upon *intent*, in which plaintiff asserts the defendant intentionally destroyed the evidence. The plaintiff's complaint, in the instant case, titles his cause of action as "Tortious Interference with Prospective Civil Action by Spoliation of Evidence." In setting forth his allegations, the plaintiff states the defendant *intentionally* destroyed and/or disposed of the T-clamp.

More states have been faced with cases involving the negligent destruction of evidence than cases involving the intentional destruction of evidence. When negligence is the basis of the suit alleging an economic injury resulting from the destruction of evidence, a duty on behalf of the defendant arising from the

relationship between the parties or some other special circumstance must exist in order for the cause of action to survive. In *Bondu v. Gurvich*, 473 So. 2d 1307 (Fla. Dist. App. 1984), a hospital had failed to preserve certain medical records pertaining to plaintiff. As a result, plaintiff lost a medical malpractice lawsuit against certain physicians because, in the absence of the hospital records, plaintiff was unable to obtain an expert witness. The Florida Court of Appeals, over a strong dissent by Chief Judge Schwartz, held that because of the hospital's statutory duty to maintain and make available medical records, plaintiff would be allowed to pursue a claim against the hospital for alleged spoliation of evidence. The basis for the decision in *Bondu* was a Florida statute which imposed a duty upon all hospitals to maintain and make available to patients their medical records, and the Court expressly found that it was the hospital's breach of that duty which gave rise to plaintiff's cause of action. Thus, the tort recognized in *Bondu* was based upon a statutory duty, and not upon any independent common-law duty to preserve evidence. It should be noted that in *Bondu* the plaintiff had also asserted a claim based upon the intentional destruction of records which was dismissed for failure to state a cause of action. No appeal was taken from that ruling.

In *Coley v. Ogden Mem. Hosp.*, 107 App. Div. 2d 67, 485 N.Y.S.2d 876 (1985), plaintiff sustained injuries in the course of his employment when he fell from a ladder which collapsed. The ladder was discarded. Plaintiff sued his employer, alleging that the failure to preserve the ladder precluded discovery of the identity of its manufacturer and thereby foreclosed plaintiff's potential product liability action against third parties. The court affirmed the trial court's dismissal of plaintiff's claim, stating:

"We are unable to identify any duty owed by defendant to plaintiff with regard to the safekeeping of the ladder. The record reveals no promise by defendant or its employees to inspect or safeguard the ladder for plaintiff's benefit . . . ." 107 App. Div. 2d at 69.

A federal district court applying Pennsylvania law allowed a negligence claim based on failure to preserve physical evidence in *Pirocchi v. Liberty Mutual Insurance Co.*, 365 F. Supp. 277 (E.D. Pa. 1973). There, plaintiff was injured in the course of his employment when he fell from a metal chair. After the accident,

a claims adjuster employed by defendant took possession of the chair for the purpose of investigating a third-party action against the chair manufacturer or other possible third-party defendants. Plaintiff retained counsel for the purpose of pursuing his third-party claims. Thereafter, the metal chair disappeared, and plaintiff filed suit claiming defendant's negligence destroyed his cause of action against third parties. The court in *Pirocchi* expressly recognized that there is no common-law duty to preserve evidence. It was conceded that defendant "owed no duty to Pirocchi to preserve this piece of evidence to aid him in his pursuit of a third party action." 365 F. Supp. at 279. Instead, the duty arose because defendant affirmatively took possession of the chair for the purpose of investigating a potential civil action by plaintiff against the manufacturer and others. Having voluntarily embarked upon a course of conduct designed to assist plaintiff, the defendant assumed a duty to the plaintiff.

Similarly in *Parker v. Thyssen Min. Const., Inc.*, 428 So. 2d 615 (Ala. 1983), the Alabama Supreme Court found no independent common-law duty on the part of an employer to preserve evidence for an employee's potential civil action against third parties. In *Parker*, plaintiff was injured on the job when a concrete wall collapsed. Following the accident, plaintiff's employer collected samples of the concrete. Plaintiff later brought suit against his employer, alleging that the employer's negligent action in collecting the samples and failing to preserve them wrongfully interfered with and impaired his ability to pursue claims against the manufacturer and suppliers of the cement. The Alabama court affirmed summary judgment against plaintiff.

Plaintiff contends that the foregoing cases and others similar to them are not persuasive because they are based upon negligence as opposed to an intentional interference with a third-party action. While this may be true, the cases are authority for the general rule that absent some special relationship or circumstance there is no duty to preserve evidence for the benefit of another.

Only two courts have recognized the tort of *intentional* interference with a prospective civil action by spoliation of evidence. In *Smith v. Superior Court*, 151 Cal. App. 3d 491, 198 Cal. Rptr. 829 (1984), the plaintiff was injured when the rear wheel and tire

flew off a van and crashed into plaintiff's windshield. Immediately after the accident, the van was towed to Abbott Ford, Inc., the dealer that had customized the van with "deep dish mag wheels" before selling the van. Within a few days following the accident, Abbott Ford agreed with Smith's counsel to preserve the physical evidence, consisting of certain automotive parts, for later use in a possible action against Abbott Ford and/or others. The evidence was subsequently lost or destroyed making it impossible for Smith to pursue her claim. She then sued alleging a cause of action against Abbott Ford for "tortious interference with [a] prospective civil action by spoliation of evidence," the identical claim asserted in the present action before this court. The court considered various arguments pro and con on the question of recognizing such a tort and found it to be analogous to the tort of intentional interference with a prospective business advantage. That tort, the court stated, allows recovery for interference with business relationships or expectations where the expectations of the parties are the subject of an unenforceable contract. The importance of "probable expectancies" had been recognized by California case law dealing with the interference with prospective business advantage and all that a plaintiff is required to allege is a "reasonable probability" that a contract or profit would have resulted but for the defendant's acts. The court found that a prospective civil action in a product liability case is also a "probable expectancy" to be protected from interference. 151 Cal. App. 3d at 502.

One other state has followed the lead of California in recognizing the tort for intentional interference with a prospective civil advantage by spoliation of evidence. In *Hazen v. Municipality of Anchorage*, 718 P.2d 456 (Alaska 1986), a tape recording was taken of the plaintiff by an undercover police officer immediately prior to her arrest for prostitution at her massage parlor. The plaintiff claimed, in an action against the arresting officers, the city, and the city attorney, that the tape contained exculpatory statements and on the tape she denied sex was available at her parlor. Later, however, the tape somehow became inaudible and the plaintiff asserted it had been intentionally altered. The Alaska Supreme Court found *Smith* persuasive and held plaintiff had a cause of action for intentional interference with a pro-

spective civil action by spoliation of evidence. The court stated the plaintiff's false arrest and malicious prosecution actions were valuable probable expectancies which were destroyed or diminished by the destruction of the tape.

Both *Smith* and *Hazen* are readily distinguishable from the case before us. In *Smith*, Abbott Ford had agreed with Smith's counsel that it would safeguard and preserve the automotive parts for inspection and use by the plaintiff, thereby creating a duty to do so. No such agreement exists in the case at bar. In *Hazen*, the destruction of an allegedly exculpatory tape would presumably make conviction easier for the prosecution. In both cases the evidence was destroyed by the adverse party in pending litigation to the direct benefit of such party. That is not the situation with which we are faced. To the contrary, it would be to the disadvantage of the defendant herein to destroy any evidence because as the employer of plaintiff it would have been subrogated to any recovery Koplin might have obtained to the extent of the workers' compensation payments made to Koplin. K.S.A. 44-504. Additionally, defendant here was not the adverse party in any action pending or contemplated by plaintiff.

Plaintiff readily concedes in his brief that "no jurisdiction has recognized a general common-law duty to preserve evidence" and that "under the present case law, Rosel Well has no articulated common-law duty to preserve Koplin's evidence." It is fundamental that before there can be any recovery in tort there must be a violation of a duty owed by one party to the person seeking recovery. *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 (1976); Black's Law Dictionary 1660-61 (4th ed. rev. 1968); 74 Am. Jur. 2d, Torts § 8, 86 C.J.S., Torts § 6. Plaintiff urges that this court should not hesitate to adopt the new tort or any other new remedy whenever a person suffers loss at the hands of a "wrongdoer." The problem with this argument is that, absent a duty to preserve the T-clamp, defendant is not a wrongdoer and had an absolute right to preserve or destroy its own property as it saw fit. To adopt such a tort and place a duty upon an employer to preserve all possible physical evidence that might somehow be utilized in a third-party action by an injured employee would place an intolerable burden upon every employer. Plaintiff argues that not to

recognize this new tort would encourage "all future defendants in every case to avoid liability by destroying and/or disposing of evidence." Such an argument, while perhaps relevant to *Smith* and *Hazen*, does not apply to the facts of this case. As pointed out earlier, *Smith* and *Hazen* involved cases wherein the defendants or potential defendants in the underlying case destroyed the evidence to their own advantage. Whether we would recognize a cause of action under similar facts is not before this court for determination and we leave that decision for another day. Here, we clearly have a different factual setting in which the defendant destroyed its own property, for whatever reason, at a time when Koplin had no claims against his employer except pursuant to the workers' compensation laws. There are no special circumstances or relationships which created any duty for defendant to preserve the T-clamp.

An analogouos situation was presented in *Hokanson v. Lichtor*, 5 Kan. App. 2d 802, 626 P.2d 214 (1981). Hokanson was injured in an automobile-motorcycle accident with a vehicle driven by Margaret E. Faulkner. Hokanson sued Faulkner for injuries sustained and she, through her insurance carrier, had Hokanson examined by Dr. Lichtor. Hokanson contended Lichtor was going to commit perjury in his testimony about Hokanson's injuries. Following trial in the personal injury action, Hokanson filed suit against Dr. Lichtor, Faulkner's insurance carrier State Farm Mutual Insurance Company, and H. Lee Turner, attorney for Faulkner and State Farm. Hokanson alleged that he had been damaged by the perjured testimony of Lichtor and that the doctor, State Farm, and Turner had all been engaged in a conspiracy for Lichtor to commit perjury in the original suit. The district court dismissed Hokanson's claim for failure to state a cause of action and Hokanson appealed. The Court of Appeals held:

"Civil conspiracy does not become actionable without the commission of some wrong that would give rise to a cause of action independent of the conspiracy." Syl. ¶ 6.

"In the absence of a statute authorizing a cause of action for perjury, no civil cause of action for damages exists for perjury or conspiracy to commit perjury." Syl. ¶ 7.

The court stated:

"As we view the record before us, and after having heard oral argument, plaintiff's intended cause of action ultimately depends upon one alleged tortious incident—the false testimony of Lichtor at the first trial, supported by the conspiracy of Turner and State Farm. Thus, in our opinion, the question presented is whether a civil action exists for either perjury or conspiracy to commit perjury.

. . . .

"The overwhelming majority of authority from other jurisdictions holds that no civil cause of action for damages exists for either perjury or conspiracy to commit perjury. It is well settled that a plaintiff who has lost his case because of perjured testimony cannot sue the perjurer for damages. *Morgan v. Graham*, 228 F.2d 625, 627 (10th Cir. 1956); *Anchor Wire Corp. v. Borst*, 277 App. Div. 728, 102 N.Y.S.2d 871 (1951); 70 C.J.S., Perjury §§ 92-93. See Annot., 54 A.L.R.2d 1298, § 7. No civil action for damages lies for false testimony or for subornation of false testimony. Annot., 31 A.L.R.3d 1423, § 2[a]. Most courts reason that the remedy for perjury is criminal punishment or an action to set aside the judgment rather than a civil action for damages." pp. 804-05.

The court discussed at length the reasoning behind the general rule and in doing so recognized that there are criminal penalties for perjury and conspiracy. However, the court did not hold that the criminal sanctions were exclusive and precluded such an action if a valid cause of action was otherwise stated. The Court of Appeals followed the general rule and affirmed the trial court's dismissal of the action. The analogy between a civil action based on perjured testimony and a civil action based on destruction of evidence was made in *Bondu v. Gurvich*, 473 So. 2d 1307, where Chief Judge Schwartz in his dissenting opinion on rehearing stated:

"Upon reconsideration of the issue in the light of the motion for rehearing, I am persuaded that the tort created by the majority opinion, which arises when a failure to provide required hospital records 'results' in a loss of the underlying malpractice action, should not be recognized. In my view, such a rule runs counter to the basic principle that there is *no* cognizable independent action for perjury, or for any improper conduct even by a witness, much less by a party, in an existing lawsuit. E.g., *Kessler v. Townsley*, 132 Fla. 744, 182 So. 232 (1938). Were the rule otherwise, every case would be subject to constant retrials in the guise of independent actions." 473 So. 2d at 1313-14.

Plaintiff contends the analogy of the present case to *Hokanson* is misplaced because here the plaintiff has no other remedy, such as a motion for new trial, and defendant is not subject to criminal prosecution. Be that as it may, the policy behind the general rule

and doctrine recognized in *Hokanson* is sound and applies to a destruction of evidence as well as perjured testimony.

Defendant points out other considerations which it asserts militate against adoption of the "new tort" of spoliation of evidence. Among them are the generation of endless litigation (as recognized by Chief Judge Schwartz in *Bondu*); inconsistency with the intent of the workers' compensation laws; rank speculation as to whether the plaintiff could have ever recovered in the underlying action and, if so, the speculative nature of the damages; the limitless scope of the new duty which would be created; and the unwarranted intrusion on the property rights of a person who lawfully disposes of his own property.

We conclude that absent some independent tort, contract, agreement, voluntary assumption of duty, or special relationship of the parties, the new tort of "the intentional interference with a prospective civil action by spoliation of evidence" should not be recognized in Kansas.

The answer to the certified question of whether Kansas would recognize a common-law tort action for intentional interference with a prospective civil action by spoliation of evidence is in the negative under the facts of this case. In view of the decision reached on the first question, there is no need to consider the other questions certified by the federal district court.

It Is By The Court So Ordered this 27th day of March, 1987.