[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
FACTUAL BACKGROUND
On May 6, 1993, the plaintiffs, Melana and Gayle Reilly, filed a four count revised complaint against the defendants, former West Haven Police Chief Michael D'Errico, former West Haven Deputy Police Chief George Greim and the City of West Haven. The facts as alleged in the plaintiffs' revised complaint are as follows.
On March 17, 1985, Melana Reilly, a minor, was struck by a vehicle operated by Mark Allen on Robart Street in West Haven. Reilly suffered serious and permanent injuries as a result of the collision. An eyewitness observed a West Haven police cruiser driven by Officer Burton Gifford pursuing Allen's vehicle prior to its collision with Reilly. According to the eyewitness, the police cruiser did not have its lights and siren activated in violation of General Statutes §§ 14-283 and 14-283a and the West Haven police pursuit policy.
On March 20, 1985, Attorney Barry Sinoway, the Reillys' attorney, had a state sheriff serve a letter on D'Errico. The letter requested that D'Errico preserve all March 17, 1985 radio tapes between dispatch and Gifford until trial. The plaintiffs gave the City of West Haven notice of their intention to sue Gifford on August 26, 1985. In February, 1987, the plaintiffs filed a lawsuit against Gifford for engaging in an unlawful pursuit. Gifford denied being engaged in a pursuit at the time of Melana Reilly's injuries. In October, 1992, during the trial of the underlying lawsuit, subpoenas were issued to the City of West Haven Police Department and the City of West Haven Corporation Counsel to produce the March 17, 1985 radio tapes.
At the time of trial in the action against Gifford, corporate counsel for the City of West Haven informed the Reillys' attorney that the March 17, 1985 radio tapes had been destroyed. On November 11, 1992, the jury returned a verdict in favor of the defendants, including Detective Gifford. In the present action, in which Gifford is not a defendant, the plaintiffs have named D'Errico and Greim, along with the City of West Haven, as defendants for the alleged harm they caused the plaintiffs by not preserving for trial the police tape of Gifford's alleged pursuit. CT Page 9607
Specifically, in count one of their revised complaint, the plaintiffs allege that D'Errico tortiously interfered with the plaintiffs' civil action by spoliating evidence. In count two, the plaintiffs allege that the City of West Haven is liable to them pursuant to General Statutes § 7-465 for indemnification of D'Errico. In count three of their revised complaint, the plaintiffs allege that Greim tortiously interfered with the plaintiffs' civil action by spoliating evidence. In count four, the plaintiffs allege that the City of West Haven is liable to them under § 7-465 for indemnification of Greim.
On June 9, 1993, the defendants filed a motion to strike the plaintiffs' entire four count revised complaint on the grounds that Connecticut does not recognize a cause of action for tortious interference with a civil action by spoliation of evidence, and even in those jurisdictions that do, the plaintiffs' allegations fail to state a legally sufficient cause of action.
As required by Practice Book § 155, the defendants have filed a memorandum in support of their motion to strike, and the plaintiffs have timely filed a memorandum in opposition. The defendants also filed a reply memorandum.
LEGAL DISCUSSION
"`The purpose of the motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.'" (Citations omitted.) Gordon v. Bridgeport Housing Authority, 208 Conn. 161,170, 544 A.2d 1185 (1988); Practice Book § 152. "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." (Citations omitted.)Bouchard v. People's Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991). Furthermore, if a defendant's motion to strike is directed to the entire complaint, then the motion will "fail if any of the plaintiff's claims are legally sufficient." Doyle v. A P RealtyCorp., 36 Conn. Sup. 126, 127 (January 11, 1980, Conway, J.).
The defendants argue in their memorandum in support of their motion to strike that the court should strike the plaintiffs' revised complaint because Connecticut does not recognize a cause of action for interference with a civil action by spoliation of evidence. The defendants further argue that even in those jurisdictions that do recognize such a cause of action, the CT Page 9608 plaintiffs' allegations have failed to state a legally sufficient cause of action.
The plaintiffs argue in their memorandum in opposition that they have "set forth a well-plead[ed] cause of action for tortious spoliation of evidence." The plaintiffs further argue that the present case is one of first impression in Connecticut and that the court should recognize a cause of action for spoliation of evidence.
There are two different torts for the spoliation or destruction of evidence. See Koplin v. Rosel Well Perforators,Inc., 241 Kan. 206, 734 P.2d 1177, 1179-80 (1987). First, is the tort of intentional spoliation of evidence, in which the plaintiff alleges that the defendant intentionally destroyed evidence, impairing the plaintiff's right to sue a third-party tortfeasor. See generally 70 ALR 4th 984. Second, is the tort of negligent spoliation of evidence, in which the plaintiff alleges that the defendant negligently destroyed evidence, impairing the plaintiff's right to sue a third-party tortfeasor. See Koplin v. Rosel WellPerforators, Inc., supra, 734 P.2d 1179-80.
The elements of intentional spoliation of evidence are (1) pending or probable litigation involving the plaintiff; (2) knowledge by the defendant of the existence or likelihood of the litigation; (3) intentional acts of spoliation on the part of the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. Hirsch v. General Motors Corp., 266 N.J. Super. 222,238, 628 A.2d 1108 (1993); see also Smith v. Howard JohnsonCo., 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).
Only a few states have recognized the tort of intentional spoliation of evidence. See Edwards v. Louisville Ladder Co.,796 F. Sup. 966, 968-69 (W.D. La. 1992). The leading case for a claim based on intentional spoliation of evidence is Smith v. SuperiorCourt of Los Angeles, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (2nd Dist. 1984). In Smith, a customized mag wheel and tire flew off a van and struck the windshield of the plaintiff's car. Id., 494. The impact sent pieces of glass into the plaintiff's eyes blinding her permanently. Id. The van was towed for repairs to the dealer that had put the custom tire on the van. Id. The dealer agreed with the plaintiff's attorney to keep parts of the van for evidence. Id. The parts were either lost or destroyed making it impossible for the plaintiff's expert to inspect and test the parts CT Page 9609 to determine what caused the wheel and tire to fall off. Id.
The plaintiff in Smith alleged that the dealer had intentionally and maliciously destroyed the evidence. Id., 495. The court concluded "that a prospective civil action in a product liability case is a valuable `probable expectancy' that the court must protect from the kind of interference alleged herein." (Citation omitted.) Id., 502. Despite its concern over the uncertainty of damages, the court recognized the tort of intentional spoliation of evidence where the underlying personal injury litigation was pending. Id., 500-03.
Alaska recognized the tort of intentional spoliation of evidence in Hazen v. Municipality of Anchorage, 718 P.2d 456
(Alaska 1986). In Hazen, the police taped the verbal exchange between the plaintiff and officer just prior to her arrest. Id., 458. After hearing the tape, which contained exculpatory comments, the plaintiff's attorneys requested that the police preserve the tape or that the plaintiff be given a copy because the plaintiff intended to file a civil suit for false arrest and malicious prosecution. Id., 459. The prosecutor told the court that the tape would be preserved. Id. During discovery of the plaintiff's subsequent civil suit, the plaintiff's civil attorney requested and obtained the arrest tape. Id. The tape was inaudible. Id. The trial court granted a directed verdict in favor of the defendants. Id., 459-60.
On appeal, the Alaska Supreme Court held that the plaintiff inHazen had "a common-law cause of action in tort for intentional interference with prospective civil action by spoliation of evidence." Id., 463. The court when on to state that "[i]f the arrest tape was intentionally altered, this was an unreasonable interference with these expectancies [i.e., prospective actions for false arrest and malicious prosecution] that can be remedied in tort." Id., 464.
Many states have not recognized or have refused to recognize a cause of action for intentional spoliation of evidence. SeePetrik v. Monarch Printing Corp., 150 Ill. App.3d 248,501 N.E.2d 1312, 1321 (1986) (failing to reach question of whether tort of intentional spoliation exists in Illinois); Koplin v. Rosel WellPerforators, Inc., supra, 734 P.2d 1177 (refusing to recognize cause of action for intentional spoliation in Kansas because no common law duty to preserve evidence exists); Edwards v. LouisvilleLadder Co., supra, 796 F. Sup. 966 (declining to recognize cause of CT Page 9610 action for intentional spoliation in Louisiana); Weigl v. QuincySpecialties Co., 601 N.Y.S.2d 774, 158 Misc.2d 753 (Sup. 1993) (noting that New York courts follow the majority view and do not view spoliation of evidence as an actionable tort); see also Pharrv. Cortese, 559 N.Y.S.2d 780, 147 Misc.2d 1078 (Sup. 1990) (declining to recognize intentional spoliation of evidence as a separate tort).
In the present case, even if this Court were inclined to recognize a cause of action for intentional spoliation of evidence, the plaintiffs have not alleged facts sufficient to state such a cause of action. The plaintiffs have not alleged in their revised complaint intentional acts of spoliation on the part of the defendants designed to disrupt the plaintiffs' case. See Hirsch v.General Motors Corp., supra, 266 N.J. Super. 238 (listing elements for tort of intentional spoliation of evidence). The plaintiffs allege in the second and fourth counts of their revised complaint that the City of West Haven is liable to them pursuant to General Statutes § 7-465 for indemnification of D'Errico and Greim. In both counts the plaintiffs claim that D'Errico and Greim's acts were not willful or wanton. Moreover, in the first and third counts of the revised complaint, the plaintiffs did not allege that the tapes were intentionally destroyed. Because the plaintiffs have not alleged a cause of action for intentional spoliation of evidence in counts one and three, a cause of action based on either of those counts must also fail.
Several states have recognized a cause of action for negligent spoliation of evidence. Koplin v. Rosel Well Perforators, Inc.,
supra, 734 P.2d 1179-80. California courts recognized the tort of negligent spoliation of evidence for prospective civil litigation in Velasco v. Commercial Building Maintenance Co., 169 Cal.App.3d 874,877, 215 Cal.Rptr. 504 (1985). In Velasco, the plaintiffs suffered personal injuries when a bottle exploded. Id., 876. The plaintiffs brought the bottle remains in a bag to an attorney who left the bag on his desk. Id. A custodian in the attorney's building disposed of the unmarked bag and its contents. Id. However, the court in Velasco dismissed the plaintiffs' appeal because it was not reasonably foreseeable to the custodian that an unlabeled bag containing a broken bottle on the attorney's desk was needed for a client's case. Id., 878-79.
Florida courts recognized the tort of negligent spoliation inBondu v. Gurvich, 473 So.2d 1307 (Fla.App. 3d Dist. 1984). InBondu, the plaintiff alleged that the hospital in which her husband CT Page 9611 died during the course of a triple bypass operation negligently lost his anesthesiology records. Id. The plaintiff had lost her medical malpractice wrongful death claim against the hospital. Id. The court found that the hospital had a statutory duty to maintain the records. Id.
In the present case, this court must determine whether the defendants had a duty to preserve the police tapes until the plaintiffs needed them for litigation. See Koplin v. Rosel WellPerforators, Inc., supra, 734 P.2d 1179-80. The existence of a duty of care, an essential element of negligence, is a matter of law for the court to decide. Shore v. Stonington, 187 Conn. 147,151, 444 A.2d 1379 (1982).
 A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act.
(Citations omitted.) Burns v. Board of Education, 228 Conn. 640,646, 638 A.2d 1 (1994).
A contract did not exist between the plaintiffs and defendants because the defendants never agreed to preserve the tapes. Additionally, the defendants had no statutory duty to preserve the tapes. In the criminal law context, a statutory duty to preserve witnesses' statements exists under General Statutes § 54-86b. Nevertheless, Connecticut courts have been reluctant to overturn criminal convictions where the police have erased tapes of statements prior to trial. State v. Woodward, 27 Conn. App. 786,792 n. 2, 609 A.2d 1027 (1992).
Furthermore, in a federal case brought under 42 U.S.C. § 1983, which is factually similar to the present case, the court held that the plaintiff did not have any claim of entitlement to the police tapes of a pursuit involving his son and the police that ended with his son's fatal car accident. Spano v. McAvoy, 589 F. Sup. 423,426 (N.D.N.Y. 1984). The court did note that "[a]rguably, had a timely request been made this . . . could have constituted an understanding stemming from an independent source sufficient to yield a legitimate claim of entitlement protected by due process." Id., citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. CT Page 9612 2701, 2709, 33 L.Ed.2d 548 (1972). The court further held that the plaintiff also had "no cognizable liberty interest protecting him from the impairment of his case nor from his ability to litigate successfully as a result of defendants' actions." Id., 428.
Connecticut's common law does not impart a duty upon the police to preserve police tapes for possible use in civil litigation. Indeed, "[t]he law does not recognize `a duty in the air.'" Shore v. Town of Stonington, supra, 187 Conn. 151. Moreover, the Connecticut Supreme Court has held that police departments in Connecticut are not obligated to indefinitely preserve tapes of police radio communications; State v. Wityak,226 Conn. 470, 627 A.2d 1341 (1993); or even 911 tapes; State v. Cain,223 Conn. 731, 613 A.2d 804 (1992). In the present case, over seven years had elapsed from the time of the letter requesting preservation of the tape and the trial subpoena for production of the tape. Furthermore, it was not foreseeable to the defendants that the plaintiffs would be harmed by the absence of the tape because the plaintiffs had sources to prove the allegations in their original cause of action. Indeed, the plaintiffs had access to the police officer's testimony, the police dispatcher's testimony, and even an alleged eyewitness to the incident. SeePharr v. Cortese, supra, 559 N.Y.S.2d 781-82. Finally, no agreement to preserve the evidence, voluntary assumption of duty or special relationship between the parties has been alleged by the plaintiffs.
In sum, no contractual, statutory or common law authority exists in Connecticut imparting a duty upon the police to preserve tapes of police communications for possible civil litigation. Even if this court were inclined to recognize a cause of action for negligent spoliation of evidence, the plaintiffs have not alleged facts sufficient to state such a cause of action. Further, since the plaintiffs have not alleged a cause of action for negligent spoliation of evidence in counts one and three, counts two and four must also fail because they are based on counts one and three.
Additionally, the court declines to recognize a cause of action for spoliation of evidence in the present case for the following reasons. First, a remedy for discovery violations already exists in Connecticut. In the case of discovery violations, Connecticut courts "may, on motion, make such order as the ends of justice require." Mulrooney v. Wambolt, 215 Conn. 211,215-16 n. 3, 575 A.2d 996 (1990), quoting Practice Book § 231. CT Page 9613
Second, the inherently speculative nature of the spoliation tort militates against adopting such a cause of action. SeeEdwards v. Louisville Ladder Co., supra, 796 F. Sup. 969-70. Determining what the absent evidence may have shown borders on guesswork. Id. Of course, just because the plaintiffs lost a lawsuit without the evidence does not mean that they would have won it with the evidence. Id., 970. In addition, uncertainty exists as to what amount in damages, if any, the plaintiffs would be entitled to receive. Id., 969.
Third, the court declines to adopt the spoliation tort for the policy reasons of finality of judgments and judicial economy. Id., 971.
In conclusion, Connecticut law does not recognize a cause of action for tortious interference with a civil action by spoliation of evidence. Even if spoliation of evidence were a cognizable cause of action, the plaintiffs have failed to allege facts sufficient to constitute a cause of action for either intentional or negligent spoliation of evidence. It follows that the plaintiffs' indemnification counts also fail because they are based on the legally insufficient tortious spoliation of evidence allegations. Accordingly, the defendants' motion to strike the plaintiffs' entire four count complaint must be granted.
CONCLUSION
Based on the foregoing, the defendants' Motion To Strike (#106) is granted.
So ordered.
Michael Hartmere, Judge