685 So.2d 33 (1996)
ST. MARY'S HOSPITAL, INC., Appellant,
v.
Alonzo BRINSON and Willa Brinson, natural parents and guardians of the Estate of Alonzette Brinson, deceased, and Alonzo Brinson and Willa Brinson, individually, Appellees.
No. 94-2130.
District Court of Appeal of Florida, Fourth District.
December 4, 1996.
Rehearing, Certification, and Rehearing Denied January 22, 1997.
*34 Christopher L. Kurzner, Arthur J. England, Jr., Charles M. Auslander, and Marlene K. Silverman of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Jeffrey C. Fulford and Michael D. Burt of Bobo, Spicer, Ciotoli, Fulford, Bocchino, DeBevoise & LaClainche, West Palm Beach, for appellant.
Steven E. Stark of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for Amicus Curiae-Florida Defense Lawyers Association.
Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Montgomery & Larmoyeux, West Palm Beach, for appellees.
Rehearing, Certification, and Rehearing En Banc Denied January 22, 1997.

ON MOTION FOR REHEARING
GUNTHER, Chief Judge.
We withdraw our earlier opinion filed May 22, 1996, and substitute the following opinion:
Appellant, St. Mary's Hospital, Inc. (St. Mary's), seeks review of an adverse $8,325,000 final judgment and raises numerous issues on appeal. We affirm.
On August 14, 1992, Alonzette Brinson, a nineteen-month-old infant, was admitted to St. Mary's to undergo an out-patient surgical procedure to correct a drooping eyelid. The surgery was performed under general anesthesia with Dr. John Cooney administering the anesthesia through equipment owned and provided by St. Mary's. Apparently, during surgery, Alonzette received an increased amount of anesthesia and eventually suffered cardiac arrest. Alonzette was placed on a life support respirator and, ten days later, Alonzette was pronounced dead.
As a result of the foregoing, the Brinsons, individually and as the natural parents and guardians of Alonzette's estate, brought a negligence action against St. Mary's, Dr. Cooney, and Dr. Cooney's professional association. Eventually, the Brinsons settled with Dr. Cooney and his professional association, thereby leaving only a claim against St. Mary's for its own negligence. Apparently, however, brief discovery revealed that sometime after Alonzette's death, the halothane vaporizer used in the anesthesia machine during Alonzette's surgery was disassembled by its manufacturer. The Brinsons then filed a second complaint against St. Mary's, charging it with the negligent and/or intentional destruction of the vaporizer. Basically, the Brinsons alleged that because St. Mary's knew of the potential civil claim against the vaporizer's manufacturer, it had a duty to preserve the vaporizer, and its failure to do so impaired the Brinsons' ability to prove a cause of action against the manufacturer and other responsible agents of the vaporizer unit.
Ultimately, the trial court consolidated the two cases over St. Mary's objection. St. Mary's claimed that consolidation placed it in the "untenable position of being forced to choose between foregoing the statutorily created privilege for risk management material (section 395.0197(4), Florida Statutes (1993)) in the underlying negligence action, or being prohibited from using information necessary to defend against the allegation of negligent spoliation of evidence." Nevertheless, St. Mary's repeated motion to bifurcate was denied and the cause proceeded to trial, at which St. Mary's elected to waive the risk management privilege in order to better defend the spoliation action.
During the first week of trial, the Brinsons deposed St. Mary's assistant risk manager. At the deposition, the risk manager stated that she relied in part on reports prepared by the Affiliated Risk Control Agency (ARCA reports) in investigating Alonzette's death. Although requested, St. Mary's refused to produce these reports, claiming they were protected by the attorney/client privilege.
The Brinsons subsequently requested the trial court to order St. Mary's to produce the ARCA reports, claiming they were discoverable because St. Mary's waived its risk management privilege. Counsel for St. Mary's again claimed the attorney/client privilege and informed the trial court that he was instructed by "the powers that be" not to produce the reports. Once the trial court forewarned St. Mary's that it might strike its *35 defenses if it willfully refused to produce the reports, the reports were relinquished for an in-camera inspection. The trial court inspected the ARCA reports, excepted certain portions under the attorney/client privilege, and ordered St. Mary's to produce the remainder. St. Mary's again refused, even after the trial court warned that it was "probably" going to strike its entire defense. After brief argument wherein St. Mary's refused anew to produce the documents, the trial court struck St. Mary's defenses and entered a verdict in favor of the Brinsons on the spoliation claim.
During the damages phase of the trial, St. Mary's was precluded from arguing apportionment of fault because it was a stricken affirmative defense. Following closing arguments and deliberations, the jury returned a verdict in favor of the Brinsons for $9 million. After setting off the $675,000 paid by Dr. Cooney pursuant to the settlement, the trial court entered a written final judgment in favor of the Brinsons for $8,325,000.
Initially, we find that the trial court did not err in allowing the Brinsons to proceed on an action for the spoliation of evidence. The Third District has explicitly and repeatedly recognized that a cause of action exists in Florida for the spoliation of evidence. E.g., Sponco Mfg., Inc. v. Alcover; 656 So.2d 629 (Fla. 3d DCA 1995), rev. dismissed, 679 So.2d 771 (Fla.1996); Continental Ins. Co. v. Herman, 576 So.2d 313 (Fla. 3d DCA 1990), rev. denied, 598 So.2d 76 (Fla.1991); Miller v. Allstate Ins. Co., 573 So.2d 24 (Fla. 3d DCA 1990), rev. denied, 581 So.2d 1307 (Fla.1991); Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984), rev. denied sub nom. Cedars of Lebanon Hosp. Care Ctr., Inc. v. Bondu, 484 So.2d 7 (Fla. 1986). As explained by our sister court, "a prospective civil action ... is a valuable `probable expectancy' that the court must protect from interference." Miller, 573 So.2d at 26 (quoting Smith v. Superior Court, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984)). Additionally, this Court has cited the Herman opinion and implicitly held that the negligent destruction of evidence is a valid cause of action. Brown v. City of Delray Beach, 652 So.2d 1150 (Fla. 4th DCA 1995). Accordingly, we now expressly recognize a cause of action for the spoliation of evidence and adopt the Third District's characterization of this tort's necessary elements. See Herman, 576 So.2d at 315.
We also note that the trial court did not abuse its discretion in consolidating the spoliation and negligence actions. There is little reason to wait for final judgment in the underlying lawsuit before bringing an action for the spoliation of evidence. Miller, 573 So.2d at 28 n. 7. Moreover, consolidation does not merge the suits into a single cause; rather, each suit maintains its independent status with respect to the rights of the parties involved. Wagner v. Nova Univ., Inc., 397 So.2d 375 (Fla. 4th DCA 1981). Importantly, St. Mary's was not deprived of any substantive right by virtue of the trial court's consolidation. See generally id. (consolidation should not be used to deprive a party of substantive rights). Contrary to its claim, consolidation did not compel St. Mary's to waive the risk management privilege. Instead, St. Mary's made a conscious decision to waive the privilege in order to defend the spoliation claim. Accordingly, we affirm the trial court's consolidation order.
We also determine that the trial court did not abuse its discretion in striking St. Mary's pleadings and directing a verdict in favor of the Brinsons. When a party fails to comply with an order, the trial court has a broad spectrum of sanctions to impose, although the sanction chosen must be commensurate with the offense. Kelley v. Schmidt, 613 So.2d 918 (Fla. 5th DCA 1993); Insua v. World Wide Air, Inc., 582 So.2d 102 (Fla. 2d DCA 1991). Although striking a party's pleadings is the most severe sanction, it is appropriate where the offending conduct is flagrant, willful, or persistent. Kelley, 613 So.2d at 919. As explained by the supreme court:
A deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness.
Mercer v. Raine, 443 So.2d 944, 946 (Fla. 1983) (citations omitted). In the instant case, *36 St. Mary's consciously and deliberately refused to follow the trial court's order regarding the ARCA documents, even though it was forewarned that its pleadings would be struck. This intentional disobedience is the essence of contempt. C.N. v. State, 433 So.2d 661 (Fla. 3d DCA 1983). As such, the trial court did not abuse its discretion in striking St. Mary's defenses and directing a verdict for the Brinsons on the spoliation count.
We next address St. Mary's argument that it was error for the trial court to refuse to instruct the jury on apportionment of damages under section 768.81(3), Florida Statutes (1993). As we have just seen, the trial court properly struck all of St. Mary's defenses, including its apportionment defense. In Nash v. Wells Fargo Guard Servs., 678 So.2d 1262, 1264 (Fla.1996), the court held that "the defendant must plead as an affirmative defense the negligence of the nonparty" in order to invoke apportionment. Here, St. Mary's did so, but that defense was stricken because of its refusal to comply with the trial court's orders. We conclude that the striking of St. Mary's defense of apportionment eliminated its entitlement to apportionment of damages. Thus, it was not error to refuse the apportionment instruction.
Finally, we note that the trial court did not abuse its discretion in admitting a doctor's testimony on the issue of grief and bereavement in light of the supreme court's recent pronouncement in Angrand v. Key, 657 So.2d 1146 (Fla.1995). In the instant case, many jurors did not have any experience with a young child's death or the grief that follows, and the trial court reasonably concluded that the testimony would assist the jury's understanding. Additionally, we caution counsel to refrain from making "conscience of the community" arguments in their closing arguments to the jury. See generally Norman v. Gloria Farms, Inc., 668 So.2d 1016 (Fla. 4th DCA 1996). All remaining issues raised by St. Mary's are affirmed.
AFFIRMED.
SHAHOOD, J., concurs.
HENNING, PATTI ENGLANDER, Associate Judge, dissents with opinion.
HENNING, PATTI ENGLANDER, Associate Judge, dissenting.
I respectfully dissent. The consolidation of the causes of action brought into direct conflict St. Mary's statutory privilege for risk management materials in the negligence lawsuit with its right to use those same materials in defense of the spoliation lawsuit. I believe the record before this court clearly shows that the actions that led to the severe sanctions imposed on St. Mary's during this trial would not have arisen had there been two separate trials for negligence and spoliation.
Wagner v. Nova Univ., Inc., 397 So.2d 375 (Fla. 4th DCA 1981), cited by the majority, found that continued enforcement of a proper consolidation order could prejudice parties attempting to exercise competing privileges. Here, the situation is quite similar. Even if the trial court was correct in initially consolidating the two causes of action, the problems that kept evolving during trial because of that consolidation show it would have been appropriate to again sever the cases at any of the junctures requested by St. Mary's.
Accordingly, I would reverse and remand for a new trial.