690 So.2d 725 (1997)
Victoria PARANZINO, Appellant,
v.
BARNETT BANK OF SOUTH FLORIDA, N.A., Appellee.
No. 95-0577.
District Court of Appeal of Florida, Fourth District.
April 2, 1997.
*726 John M. Cruz, II of Cruz & Gordon, Fort Lauderdale, for appellant.
Patrick Patrissi of English, McCaughan & Bryan, P.A., Fort Lauderdale, for appellee.
SHAHOOD, Judge.
This is an appeal of an order granting appellee's motion to strike pleadings and for sanctions. The order dismissed appellant's complaint with prejudice. We affirm the trial court based on the following.
Appellant, Victoria Paranzino (Paranzino), sued appellee, Barnett Bank of South Florida (Barnett), for breach of contract. Appellant alleged that on or about May 24, 1991, she went to a Barnett branch location with $200,000 in cash with the intention of placing the monies in two (2) certificates of deposit, each in the amount of $100,000. Paranzino alleged that she was issued only one certificate in the amount of $100,000 even though she gave $200,000 to the appellee's employees.
Appellee denied receiving $200,000 from appellant and raised as its affirmative defenses, the doctrine of estoppel and waiver stating that appellant had received for some time, monthly account statements reflecting on their face that only one certificate of deposit in the amount of $100,000 had been issued, and that Paranzino did not deliver to the bank the additional $100,000.
While the litigation was pending, the parties together with their counsel, attended court-ordered mediation and executed a Mediation Report and Agreement which provided in relevant part the following language:
that they have read this report and agreement;... that this report and agreement is binding and enforceable without any further formalities except as otherwise indicated; that this report and agreement is the result of a confidential proceeding and all signers agree to be bound by such confidentiality and shall not disclose any discussions unless agreed to in writing by all signators or unless ordered by the court; that this mediation is governed by the provisions of Chapter 44 Florida Statutes and Rule 1.700 et. seq. which shall be binding.
(Emphasis added).
Shortly after the mediation Barnett made a written offer to settle the litigation, which was rejected by appellant.
Approximately five months after Paranzino's rejection of appellee's settlement offer, Paranzino and her daughter, Constance Ramos, who was not a party to the lawsuit, contacted the Miami Herald to discuss her version of the events relating to the action with Barnett. Subsequent thereto, an article appeared in the Miami Herald's Tropic Magazine, wherein Paranzino and her counsel disclosed the settlement offer made by Barnett Bank during the mediation conference in violation of the confidentiality provision of the Mediation Report and Agreement.
The Tropic article contained statements attributable to appellant's counsel, James Pedley, discussing the facts of the case and the settlement offer, including, but not limited to the following:
Pedley asks: Would anyone spend $30,000 trying to defraud a bank of $100,000? And earlier this year, Barnett offered the woman $25,000 to settle the case. She turned it down. Wouldn't a crook have taken the money and run?
. . . .

*727 Earlier this year, at the court's direction, the two sides met with a mediator. According to Pedley the bank offered to pay $25,000 to settle the case.
. . . .
Pedley says Paranzino's refusal of the $25,000 is the best evidence that she is not pulling a scam on the bank. Instead, she chose to go to trial, which will cost a few thousand more....
Pedley says the bank would not have made the offer unless it felt its case was shaky. He says Barnett handled the transaction badly, and he thinks the bank's lawyer knows it....
Likewise, the following segments of the Tropic article recount portions of Paranzino's version of the facts of her case:
On June 25, Barnett sent Paranzino a regular monthly statement saying she had one, and only one, $100,000 CD in the bank. When Paranzino got this shocking news, did she retrieve the envelope from her closet (it was stashed inside a white purse) and look inside? Did she call Ramos and say she was missing $100,000? No, and no. What she did, she says, was walk to the bank and ask a teller about the missing CD. She didn't catch the teller's name.
Paranzino: "She said to me, `This always happens. Don't worry. You'll see it on your statement. Don't worry about it. You have your two CDS. At the end, you'll bring them in and everything will be straightened out.' And I said, `Yes, that's right.' And I just lackadaisically never cared."
She got bank statements in July, August, September and October, all reflecting only one $100,000 CD. She say she read them all, but did not question anyone at the bank about why the statements did not mention the second CD.
Paranzino acknowledges that she did not behave like someone who had lost $100,000.
"It's my fault for not opening [the pouch]. I don't blame anyone," she says.
Maybe not, but she's definitely suing someone.
. . . .
... Paranzino said she thought "one of them" Henderson or Beardshaw took the money, but she would not point the finger directly at Henderson. Ramos [appellant's daughter] was less accusatory. Maybe the bank misplaced the money, she said: "I don't believe there was intent."
. . . .
In late September, Paranzino and Ramos met with a Tropic reporter in Pedley's Office.
Following the publication of the Tropic article, appellee moved the trial court to strike appellant's pleadings and for sanctions on the grounds that appellant and her attorney had breached the confidentiality of the mediation proceeding by disclosing information concerning the settlement offer and by making statements concerning appellee's alleged motivation for making said offer. The court granted appellee's motion to strike and imposed the harshest sanction of dismissing the case with prejudice. This appeal ensued.
It is undisputed from the record that neither appellant nor her attorney has denied making the statements to the media regarding this case and specifically the offer made by appellee to settle with appellant. Rather, appellant contends that there was no court order prohibiting discussion of the settlement offer with third parties, that there were no findings that Paranzino violated any court order or Rule of Civil Procedure, and that dismissal with prejudice was an unduly harsh sanction for a violation of the non-disclosure requirements of section 44.102, Florida Statutes (1993). We disagree.
By violating the court-ordered mediation and the confidentiality provision of the Mediation Report and Agreement, the appellant ignored and disregarded the court's authority. The mediation order was entered by the court at appellant's request and the mediation report and agreement signed by all of the parties specifically stated that the mediation proceedings were to be confidential. In addition, the agreement further provided that the mediation was governed by the provisions of chapter 44, Florida Statutes, and rule 1.700, Florida Rules of Civil Procedure.
*728 Rule 1.420(b), Florida Rules of Civil Procedure (1993), permits a court to involuntarily dismiss an action. The rule specifically provides in pertinent part, the following:
(b) Involuntary Dismissal. Any party may move for dismissal of an action or of any claim against that party for failure of an adverse party to comply with these rules or of any order of court.
In granting appellee's motion, the trial court made the following findings:
This court finds that, in the instant case, all parties were aware of the precedent condition of absolute confidentiality regarding the mediation proceedings. The evidence presented revealed that the Plaintiff and her attorney willfully and deliberately disregarded the confidentiality agreement by exposing confidential information, namely the settlement offer, to the media. Indeed, the very basis of court ordered mediation is that parties can rely upon the confidentiality of all oral or written statements. This was clearly violated with their disclosure of the settlement offer.
(Emphasis added).
In addition, the trial court further based it's ruling on strong public policy concerns in finding that appellant's breach of confidentiality violated the parties' confidentiality stipulation, and that the acts of appellant ran "afoul of the statutory language of Fla.Stat. 44.102(3)."
Section 44.102(3), Florida Statutes (1993), provides in relevant part:
Each party involved in a court-ordered mediation proceeding has a privilege to refuse to disclose, and to prevent any person present at the proceeding from disclosing, communications made during such proceeding. Notwithstanding the provisions of s. 119.14, all oral or written communications in a mediation proceeding, other than an executed settlement agreement, shall be exempt from the requirements of chapter 119 and shall be confidential and inadmissible as evidence in any subsequent legal proceeding, unless all parties agree otherwise ...
Section 44.102(3) not only provides that communications in a mediation proceeding shall be confidential and inadmissible in any subsequent legal proceeding, but that each party involved in a court-ordered mediation has a privilege to refuse to disclose and to prevent any person present at the proceeding from disclosing communications made during that proceeding. In conjunction with this provision, rule 1.730, Florida Rules of Civil Procedure (1993), further requires that mediation proceedings remain confidential.[1] Where the parties do not effectuate a settlement agreement in accordance with the dictates of rule 1.730(b), the confidentiality afforded to parties involved in mediation proceedings must remain inviolate. Gordon v. Royal Caribbean Cruises Ltd., 641 So.2d 515, 517 (Fla. 3d DCA 1994). Here, by knowingly breaching the confidentiality provision set forth in the Mediation Report and Agreement by disclosing the settlement offer to the Miami Herald, appellant and her attorney disregarded the applicable statute and rule of civil procedure governing the mediation process, and thus, deliberately violated the court's order setting the matter for mediation.
Notwithstanding the above, appellant argues that even if the trial court had the discretion to dismiss the case with prejudice, the settlement offer was made after the mediation resulted in an impasse, and thus, the confidentiality provisions would not apply. Such is not the case. The Mediation Report and Agreement merely extended the mediation for an additional ten days upon which time counsel was to advise the mediator of the status of the mediation. Since the offer was presented within those ten days, the *729 stipulation and the applicable statutes and rules were still binding upon the parties.
As to appellant's argument that the sanction imposed by the trial court was unduly harsh for such a breach, we find there to be no abuse of discretion. The Florida Supreme Court dealt with the discretionary power granted to the trial courts in imposing sanctions on litigants in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). In that case the court discussed the standard of review for the imposition of sanctions, and applied an "abuse of discretion" standard stating:
[i]n reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
382 So.2d at 1203.
Following this standard of review, the Florida Supreme Court again addressed the issue of imposition of sanctions in Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983), stating:
We agree that the striking of pleadings or entering a default for noncompliance with an order compelling discovery is the most severe of all sanctions which should be employed only in extreme circumstances. Hart v. Weaver, 364 So.2d 524 (Fla. 2d DCA 1978). A deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, Swindle v. Reid, 242 So.2d 751 (Fla. 4th DCA 1970), as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness, Herold v. Computer Components International, Inc., 252 So.2d 576 (Fla. 4th DCA 1971).
(Emphasis added).
Despite appellant's arguments, the trial court found that Mr. Pedley and the appellant violated the court order by willfully and deliberately breaching the confidentiality provision set forth in the Mediation Report and Agreement when they disclosed the settlement offer to the Miami Herald. As a result of their actions, appellant and her attorney further disregarded the applicable statute and rule of civil procedure governing the mediation process. If the trial court were to allow this willful and deliberate conduct to go unchecked, continued behavior in this vein could have a chilling effect upon the mediation process.
In Cem-A-Care of Florida, Inc. v. Automated Planning Systems, Inc., 442 So.2d 1048, 1049 (Fla. 4th DCA 1983), this court held:
[w]hen a trial judge expressly finds that a party willfully and flagrantly abused the system and violated court orders, then the severity of the sanction is within the very broad discretionary area noted in Canakaris. Although subject to review and reversal for abuse, that discretion is expansive and subject to being influenced by the parties' past actions and inactions in the litigation.

(Emphasis added).
Finally, as this court recently held in St. Mary's Hospital, Inc. v. Brinson, 685 So.2d 33, 35 (Fla. 4th DCA 1996), reh'g and reh'g en banc denied, (Jan. 22, 1997):
When a party fails to comply with an order, the trial court has a broad spectrum of sanctions to impose, although the sanction chosen must be commensurate with the offense. Kelley v. Schmidt, 613 So.2d 918 (Fla. 5th DCA 1993); Insua v. World Wide Air, Inc., 582 So.2d 102 (Fla. 2d DCA 1991). Although striking a party's pleadings is the most severe sanction, it is appropriate where the offending conduct is flagrant, willful, or persistent. Kelley, 613 So.2d at 919.
In this case, the trial court found that the actions of appellant and her attorney "willfully and deliberately disregarded the confidentiality agreement by exposing confidential information, namely the settlement offer, to the media." Such a finding by the court cannot be said to constitute an "abuse of *730 discretion" as contemplated by Canakaris and its progeny.
We accordingly affirm the order of the trial court striking appellant's pleadings and dismissing the case with prejudice.
AFFIRMED.
GUNTHER, C.J., and STEVENSON, J., concur.
NOTES
[1] Florida Rule of Civil Procedure 1.730 provides in relevant part:

(a) No Agreement. If the parties do not reach an agreement as to any matter as a result of mediation, the mediator shall report the lack of an agreement to the court without comment or recommendation ...
(b) Agreement. If an agreement is reached, it shall be reduced to writing and signed by the parties and their counsel, if any. The agreement shall be filed when required by law or with the parties' consent ...