William A. SILHAN and Melissa
L. Silhan, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
et al., Defendants.

Case No. 3:02–cv–266/LAC.

United States District Court,
N.D. Florida,
Pensacola Division.

Sept. 30, 2002.

Diane M. Longoria, Pensacola, FL, for William A. Silhan, Melissa L. Silhan.

Frank Henry Gassler, Fowler, White, Gillen, Tampa, FL, for Allstate Insurance Company.

Harold William Wasden, Pierce, Ledyard, Mobile, FL, Jeffrey Uhlman Beaverstock, Pierce, Carr & Alford, PC, Mobile, FL, for Zurich–American Insurance Group.

## ORDER

COLLIER, District Judge.

THIS CAUSE comes before the Court on Defendant Allstate Insurance Company's Motion to Dismiss Plaintiff's Complaint (Doc. 7). Plaintiffs William A. and Melissa L. Silhan have responded in opposition to Defendant's motion (Doc. 10). For the reasons stated below, Defendant Allstate Insurance Company's motion is **GRANTED**.

**1.** Defendant Allstate Insurance Company is an Illinois corporation with its principal place of business in Illinois (Doc. 1, ¶ 4), and Defendant Zurich–American Insurance Group is a New York corporation with its principal place of business in New York (*Id.*, ¶ 5; Doc. 15, ¶ 5).

## I. BACKGROUND

### A. Procedural History

On June 6, 2002, Plaintiffs filed a complaint in the Circuit Court for Escambia County, Florida (Doc. 1, Attach.). The Plaintiffs alleged that Defendants Allstate Insurance Company ("Allstate") and Zurich American Insurance Company negligently and/or intentionally destroyed evidence relevant to a prior court proceeding (*Id.* at ¶ 35). On June 25, 2002, Allstate filed a notice of removal in this Court that based jurisdiction on diversity of citizenship (Doc. 1).[1] Shortly thereafter, on July 1, 2002, Allstate filed a motion to dismiss the Plaintiff's complaint for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 7). On July 22, 2002, Plaintiffs filed a timely memorandum in opposition to Allstate's motion (Doc. 10).

### B. Relevant Facts

For purposes of ruling on this motion, the following facts are assumed true and viewed in the light most favorable to the Plaintiffs. Plaintiffs, William A. and Melissa L. Silhan are residents of Escambia County, Florida (Doc. 1, Attach.¶ 3). Plaintiffs purchased a homeowner's insurance policy from Allstate Insurance Company (*Id.*, ¶ 6).[2] The policy, numbered 088226195, was in effect at all times relevant to this action (*Id.*).

On or about the second week of February 1993, Plaintiffs received a recall notice from Sears, Roebuck, and Company ("Sears"), warning the Plaintiffs that their

**2.** Plaintiffs also had an automobile insurance policy, which is not at issue in this motion, from Defendant Zurich–American Insurance Group (Doc. 1, Attach.¶ 7).

dishwasher posed a fire hazard (*Id.*, ¶ 8). The Kenmore dishwasher was manufactured by White Consolidated Industries, Inc. ("White") (*Id.*). Then, on or about February 22, 1993, a Sears repairman came to Plaintiffs residence to repair the dishwasher (*Id.*, ¶ 9). Unfortunately, on February 24, 1993, the house was consumed and completely destroyed by a fire (*Id.*, ¶ 10).

Acting in conformity with the homeowner's insurance policy (between Allstate and Plaintiffs), Allstate retained James A. Wark & Associates ("Wark") to conduct a cause and origin fire investigation (*Id.*, ¶ 11). On both February 25 and March 2, 1993, Wark investigated the scene (*Id.*, ¶ 12). At some point during the investigation, Plaintiffs informed Wark and Allstate that the dishwasher had been repaired (due to a fire hazard recall) just two days before the fire (*Id.*, ¶ 12). During the investigation, Wark notified Allstate of its findings on a number of other potential causes of the fire besides the dishwasher (*Id.*, ¶ 13).[3] On March 2, 1993, Wark took the dishwasher motor to an engineer for further testing (*Id.*, ¶ 14). Two days later, Wark informed Allstate that the dishwasher was the most likely cause and origin of the fire, and within two weeks, Allstate expressed an intererst in pursuing a subrogation claim against Sears and White (*Id.*, ¶¶ 15–16).

On March 30, 1993, Wark issued its fire investigation report to Allstate, and it concluded that the cause of the fire could not be determined (*Id.*, ¶ 19). On April 2, 1993, Allstate authorized, arranged, and paid for the destruction of the remaining fire scene (*Id.*, ¶ 20). Even though the cause of the fire was undetermined, the dishwasher was the only evidence that Allstate preserved from the fire scene (*Id.*). In the five weeks prior to the destruction of the fire scene, Allstate did not notify Sears or White of their potential liability for the fire (*Id.*, ¶ 25). In addition, Allstate did not provide Sears or White the opportunity to inspect the fire scene (*Id.*).

Allstate and Plaintiffs entered into a subrogation agreement and filed a products liability action against Sears and White in a Florida Circuit Court on March 7, 1995 (*Id.*, ¶ 26). Allstate and the Plaintiffs alleged that the dishwasher was the cause of the fire and the ultimate destruction of the Plaintiffs' home (*Id.*). Pursuant to the subrogation agreement, Allstate had the primary authority and responsibility for prosecuting the products liability action against Sears and White (*Id.*). The Plaintiffs retained co-counsel to handle individual claims that just Plaintiffs had against Sears and White (*Id.*). After initiation of the suit, Allstate rejected a $5,000 settlement offer (*Id.*, ¶ 27).[4]

On or about December 30, 1998, after extensive discovery, Sears and White filed a motion for summary judgment on the following grounds: 1) there was insufficient evidence in the record that the Kenmore dishwasher had caused the fire, and 2) Allstate's destruction of the fire scene precluded Sears and White from defending their claim by presenting evidence of an alternative cause of the fire (*Id.*, ¶ 28). Allstate then authorized Plaintiffs' individually retained counsel to "take the lead" in both prosecuting the case and defending the summary judgment motion (*Id.*, ¶ 30).

On April 14, 2000, just one business day before the summary judgment hearing, Allstate settled its subrogation claim with

---

3. The other potential causes that Wark reported to Allstate were: 1) a battery charger, 2) a breaker box, 3) a refrigerator, 4) a washer, 5) a stove, 6) a water heater, and 7) a video cassette player (Doc. 1, Attach.¶ 13).

4. Under the subrogation agreement, Plaintiffs were not empowered to either accept or reject Sears and White's offer (Doc. 1, Attach.¶ 27).

Sears and White (*Id.*, ¶ 31). On the day of the summary judgment hearing, Allstate filed a dismissal with prejudice as to its claim (*Id.*). Plaintiffs were left to defend the summary judgment motion alone (*Id.*). As a result, Plaintiffs became exposed to liability for any adverse summary judgment ruling, including the attorneys' fees and costs of the non-prevailing party (*Id.*). Then on September 6, 2000, the trial court entered summary judgment for Sears and White (*Id.*, ¶ 32). Although the court rejected Sears and White's argument that there was no genuine issue of material fact for trial, the court entered summary judgment against Plaintiffs as a sanction for Allstate's destruction of critical evidence (*Id.*). Plaintiffs chose not to appeal the state trial court's ruling (Doc. 7, ¶ 4). Instead, Plaintiffs filed suit against Allstate for negligent and/or intentional destruction of evidence (Doc. 1, Attach.¶ 34). In the complaint, Plaintiffs alleged that Allstate's destruction of evidence resulted in the Plaintiffs suffering a loss of a viable products liability action against Sears and White (*Id.*, ¶ 38).

## II. MOTION TO DISMISS

### A. Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is designed to eliminate counts or complaints that fail to state a claim upon which relief can be granted. As such, this Court must accept all allegations of the complaint as true and construe those allegations in the light most favorable to Plaintiffs. *See Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir.1997); *Webb v. Town Council of Town of Hilliard*, 766 So.2d 1241, 1243 (Fla. 1st DCA 2000); *Ro-*

*hatynsky v. Kalogiannis*, 763 So.2d 1270, 1272 (Fla. 4th DCA 2000). A count may not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir.1983).

### B. Discussion

■■■ This case involves a relatively new tort known as "spoliation of evidence" or "destruction of evidence." "Spoliation of evidence...is a cause of action which holds someone liable for negligently or intentionally destroying material which is needed as evidence in litigation." Bard D. Rockenbach, *Spoliation of Evidence: A Double–Edged Sword*, 75 Fla. B.J. 34 (2001). There are two different types of spoliation of evidence claims. *See id.* The first type occurs when a party, during litigation, destroys or loses evidence that is vital to the opposing party. *See id.* Such loss is then treated by the court as a discovery violation, which is subject to a variety of discretionary sanctions. *See id.* The second type is an independent cause of action. *See id.* at 36. A spoliation claim arises against a defendant when that defendant breaches a duty to preserve evidence resulting in the destruction of a plaintiff's cause of action against a third party. *See id.* The type of spoliation claim at issue in the current case is the latter.[5]

---

**5.** Plaintiffs' case presents a novel use of the spoliation of evidence tort. In all prior Florida cases, the destroyed evidence was the subject matter of the claim in the underlying lawsuit. In the present case, the subject of Plaintiffs' products liability claim was the

Kenmore dishwasher. Allstate did preserve the dishwasher. Plaintiffs are suing Allstate for the destruction of the other potential causes of the fire, which were products that

Spoliation of evidence is still in its relative infancy in Florida law. The tort first appeared in the state of Florida in 1984. *See Bondu v. Gurvich,* 473 So.2d 1307 (Fla.Dist.Ct.App.1984). In order to recognize the new tort, the District Court of Appeal for the Third District of Florida relied on two California state court decisions that created new causes of action for both "negligent failure to preserve evidence for civil litigation" and "intentional interference with prospective civil action by spoliation of evidence." *See Bondu v. Gurvich,* 473 So.2d 1307 (Fla.Dist.Ct.App.1984)(citing *Williams v. California,* 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137 (1983); citing *Smith v. Superior Court* 151 Cal.App.3d 491, 198 Cal. Rptr. 829 (Cal.Ct.App.1984)(overruling recognized by *Johnson v. United Services Auto. Assn.,* 67 Cal.App.4th 626, 629, 79 Cal.Rptr.2d 234 (Cal.Ct.App.1998))). Once recognizing spoliation's existence, the court determined that the plaintiff in *Bondu* stated a cause of action for negligence;[6] however, the court did not clearly set out the elements for a negligent spoliation of evidence claim. *See id.* at1313. In a footnote, the court hinted that a tort action could possibly lie for intentional spoliation of evidence, but to date, no court in Florida has ruled on an intentional spolia-

tion claim for damages. *See id.* at 1313, n. 5.[7]

## 1. Intentional Spoliation of Evidence

 Although a cause of action for intentional spoliation has been recognized by Florida courts, no Florida court has defined or applied its elements in a case. On the other hand, a few states have defined the elements of intentional spoliation; therefore, the Court will look to those other states for guidance. Although the elements are not exactly the same in each jurisdiction, there is one common thread. To maintain an action for intentional spoliation of evidence, "[l]iability...[must be] predicated upon an intent to disrupt the underlying litigation." *Hibbits v. Sides,* 34 P.3d 327, 329 (Alaska 2001); *See also Hazen v. Municipality of Anchorage,* 718 P.2d 456, 464 (Alaska 1986); *McCool v. Beauregard Memorial Hospital,* 814 So.2d 116, 118 (La.Ct.App.2002); *Ricketts v. Eastern Idaho Equipment, Co., Inc.,* 137 Idaho 578, 51 P.3d 392, 396 (2002). Plaintiffs have not alleged any conduct by Allstate that demonstrated an intent to disrupt Plaintiffs' products liability case against Sears and White. Therefore, Plaintiffs have failed to state a claim for intentional spoliation of evidence. As a result, Defendant's motion to dismiss is hereby **GRANTED** as to the intentional spoliation of evidence claim.

---

were not the subject of the products liability claim.

**6.** The *Bondu* court determined that the complaint in that case stated a cause of action for negligence because it stated the three essential negligence elements:

(1) the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff; (2) a failure on the part of the defendant to perform that duty; and (3) an injury or damage to the plaintiff proximately caused by such failure.

*Bondu,* 473 So.2d at 1312. The court then applied those three general elements. *See id.*

**7.** Six years after *Bondu,* the District Court of Appeal for the Third District of Florida again mentioned the tort action of intentional spoliation of evidence. *See Miller v. Allstate Insurance Co.,* 573 So.2d 24, 26 (Fla.Dist.Ct.App. 1990). The court discussed the California case *Smith v. Superior Court* in more detail and then noted that other states have recognized such a cause of action. *See id.* However, again the court failed to state with any certainty that intentional spoliation of evidence is a viable cause of action under Florida tort law.

## 2. Negligent Spoliation of Evidence

 In 1990, the District Court of Appeal for the Third District of Florida defined the elements of negligent spoliation of evidence, which are as follows:

(1) existence of a potential civil action, (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action, (3) destruction of that evidence, (4) significant impairment in the ability to prove the lawsuit, (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit, and (6) damages.

*Continental Insurance Co. v. Herman,* 576 So.2d 313, 315 (Fla. 3rd DCA 1990). The element at issue in the present case is the duty element. A duty to preserve evidence can arise by contract, by statute, or by a properly served discovery request (after a lawsuit has already been filed). *See Bondu v. Gurvich,* 473 So.2d 1307,1312 (Fla.Dist.Ct.App.1984); *Miller v. Allstate,* 573 So.2d 24, 27 (Fla.Dist.Ct.App.1990); *Strasser v. Yalamanchi,* 783 So.2d 1087, 1093–94 (Fla. 4th DCA 2001). The District Court of Appeal for the Fourth District of Florida has seemingly expanded the concept of duty in negligent spoliation cases to situations where a case has not yet been filed. *See generally, St. Mary's Hospital, Inc. v. Brinson,* 685 So.2d 33 (Fla. 4th DCA 1996); *Hagopian v. Publix Supermarkets, Inc.,* 788 So.2d 1088 (Fla. 4th DCA 2001). In addition, Plaintiffs rely on a specially concurring opinion (without noting it as such to the court) for the proposition that a duty may also arise from "other 'special circumstances.'" *Torres v. Matsushita Elec. Corp.,* 762 So.2d 1014, 1019 (Fla. 5th DCA 2000)(Cobb, J., concurring specially)(citing *Boyd v. Travelers Ins. Co.,* 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 270 (1995)).[8] In the present case, Plaintiffs essentially argue that a duty was created by contract, statute, and litigation (Doc. 10, ¶ 2(a)). The Court examines each of these arguments in turn.

### a. Duty by Contract

 Plaintiffs argue that the homeowner's insurance policy with Allstate created a duty for Allstate to preserve the fire's "other" causation evidence (Doc. 10, ¶ 2(a), p. 8–9).[9] The particular contractual

---

**8.** Judge Cobb, in his specially concurring opinion, stated:

"[t]he 'duty' to preserve evidence may arise through an agreement, expressed or implied, by statute, or other 'special circumstances.' If one knows that he, she, or it is about to become involved in a civil action, this alone should be sufficient special circumstances to impose a duty of care to preserve such evidence in such potential party's possession that a reasonable person would forsee is material to that action." *Torres v. Matsushita Elec. Corp.,* 762 So.2d 1014, 1019 (Fla. 5th DCA 2000)(Cobb, J., concurring specially).

No Florida court has adopted such a broad interpretation of the duty requirement in negligent spoliation cases. Judge Cobb's statements appear in a specially concurring opinion, which is not precedential authority. In addition, the practical implications of Judge Cobb's approach pushes the duty requirement to the extreme. It is essentially impossible for everyone (even an insurance company) to hold onto every piece of potential evidence just because there is a possibility that litigation may arise sometime in the future. It is unreasonable to view the concept of duty on such a broad scale. The more prudent approach would be for a duty to arise when the possessor of the evidence is informed by the plaintiff that a lawsuit will be (or is) filed.

**9.** Plaintiffs also argue that an implied duty was created by a "special relationship" that exists between an insurance company and an insured, and such relationship allegedly arises by virtue of the insurance contract (Doc. 10, ¶ 2(a), p. 8–9). Plaintiffs cite no authority (from neither Florida nor elsewhere) for that proposition. No such "special relationship" is currently recognized under Florida spoliation law; therefore, this argument is without merit. This Court realizes that a "special relationship" was found to have existed between a police officer and a citizen in a Florida case; however, that "special relationship" (which created a duty to preserve evidence) existed because the police officer *promised* to

provisions, cited by the Plaintiffs as giving rise to a duty, provide, in relevant part:

13. **Our Rights to Recover Payment**

When we [Allstate] pay for any loss, an insured person's right to recover from anyone else becomes ours up to the amount we have paid. An insured person must protect these rights and help us enforce them. . . .

14. **Our Rights to Obtain Salvage**

We have the option to take all or any part of the damaged or destroyed covered property upon replacement or at the agreed appraised value. . . .

(Doc. 1, Attach.Ex. A., p. 22)(emphasis in original). These terms do not explicitly create a duty for Allstate to preserve evidence.

■■■ Plaintiffs argue that, based on those contractual terms, Allstate had a right to control the fire scene as well as a right to take and keep possession of any covered, destroyed property (Doc. 10, ¶ 2(a), p. 9). Plaintiffs maintain that, arising from those rights, Allstate had an implied duty not to impair Plaintiffs' products liability cause of action when Allstate exercised its contractual rights. The Court disagrees. The relevant provisions,

quoted above, do not indicate that Allstate's contractual rights are subject to any potential cause of action of the insured (Plaintiffs). Those contract provisions give Allstate a right of subrogation and a right to take possession of covered, destroyed property. This Court will not create a contractual duty when the contract provisions do not indicate such a duty exists.[10]

#### b. Duty by Statute

■■■ Plaintiffs claim that Sections 624.155(1)(a)(1) and 626.9541(1)(i) give rise to a statutory duty for insurance companies to preserve evidence (Doc. 10, ¶ 2(a), p. 10). Plaintiff's argument is without merit.

Section 624.155(1)(a)(1) provides, in relevant part:

[a]ny person may bring a civil action against an insurer when such person is damaged: . . . [b]y a violation of any of the following provisions by the insurer:

1. Section 626.9541(1)(i), (o), or (x);

. . . .

Fla. Stat. Ann. § 624.155(1)(a)(1) (West 2002).

---

preserve evidence upon the citizen's request. *See Brown v. Delray Beach*, 652 So.2d 1150, 1153 (Fla. 4th DCA 1995). Since Plaintiffs did not request and secure a promise by Allstate to preserve the causation evidence, as in *Brown*, a "special relationship" was not created.

**10.** In *Miller v. Allstate*, 573 So.2d 24 (Fla. 3rd DCA 1990), there was an explicit agreement between the parties that Allstate would return the evidence to the insured. Miller (the insured) had an automobile accident allegedly caused by a defective accelerator. Miller was aware of a potential products liability claim against the manufacturer, so Miller wished to retain possession of the vehicle for examination by experts. *See id.* at 25. Allstate wanted experts to examine the vehicle, too, so that it could prepare a defense against other antic-

ipated claims arising out of the accident. *See id.* Therefore, Allstate specifically promised to relinquish possession of the vehicle back to Miller after Allstate's experts were finished. *See id.* at 26. Instead, Allstate sold the car to a salvage yard where is was disassembled. *See id.* As a result, the court determined that Allstate had a contractual duty to preserve the vehicle as evidence that was essential to Miller's anticipated civil litigation. *See id.* at 27. The instant case is distinguishable, because there was no explicit agreement between the parties for Allstate to preserve and return all causation evidence to Plaintiffs. Plaintiffs' complaint does not allege that Plaintiffs informed Allstate of any intent to file a lawsuit, nor does the complaint allege that Plaintiffs requested Allstate to preserve all potential causes of the fire due to anticipated civil litigation.

Section 626.9541(1)(i) provides, in relevant part:

[t]he following are defined as unfair methods of competition and unfair or deceptive acts or practices:

. . .

(i) *Unfair claim settlement practices.*—

. . .

3. [c]ommitting or performing *with such frequency as to indicate a general business practice* any of the following:

a. [f]ailing to adopt and implement standards for the proper investigation of claims;

b. [m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c. [f]ailing to acknowledge and act promptly upon communications with respect to claims;

d. *[d]enying* claims without conducting reasonable investigations based upon available information;

. . . .

Fla. Stat. Ann. § 626.9541(i)(3)(a)-(d) (West 2002) (emphasis in parts 3. and d. added).

The above quoted provisions do not even create a legal duty for the an insurance company to conduct a reasonable investigation, much less a duty to preserve potential evidence. Instead, the statutes allow an insured to maintain a civil action against the insured's insurance company for *denying claims* without conducting a reasonable investigation. *See* Fla. Stat. Ann. §§ 624.155(1)(a)(1) and 626.9541(1)(i) (West 2002). Plaintiffs do not argue that Plaintiffs' insurance claims were denied without Allstate conducting a reasonable investigation. Furthermore, in order to be an actionable unfair trade practice under the statute, the denial must be "with such frequency as to indicate a general business practice." *See id.* Plaintiffs do not allege any business practice by Allstate that gives rise to a statutory violation. As a result, Plaintiffs have not demonstrated a statutory basis for the imposition of a duty on Allstate to preserve evidence.

**c. Duty by Litigation**

■ Plaintiffs basically assert that a duty to preserve evidence arose in the instant case due to the nature of Allstate's business. Plaintiffs argue that, since Allstate is an insurance company with years of litigation experience, Allstate should have known that all of the causation evidence would be relevant to a products liability action by the insured. Plaintiffs maintain that such knowledge gives rise to a duty to preserve all of the causation evidence (Doc. 10, ¶ 2(a), p. 10).[11]

■ Florida definitely recognizes a duty to preserve evidence *after* a lawsuit has been filed. "[A] party does have an affirmative responsibility to preserve any items or documents that are the subject of a duly served discovery request." *Strasser v. Yalamanchi*, 783 So.2d 1087, 1093 (Fla. 4th DCA 2001). However, there are two cases from the District Court of Appeal for the Fourth District of Florida that may have expanded that duty to much earlier stages in litigation. *See generally, Hagopian v. Publix Supermarkets, Inc.*, 788 So.2d 1088 (Fla. 4th DCA 2001); *St.*

**11.** In 1999, the District Court of Appeal for the Third District of Florida declined to recognize the existence of a common law duty to preserve evidence absent formal notice of a plaintiff's intent to file a lawsuit. *See Pennsylvania Lumberman's Mutual Insurance Co. v.* *Florida Power and Light Company,* 724 So.2d 629, 630 (Fla. 3rd DCA 1998). Therefore, at least under Third District case law, Allstate had no common law duty to preserve the causation evidence in question.

**1312**

*Mary's Hospital, Inc. v. Brinson,* 685 So.2d 33 (Fla. 4th DCA 1996).

Plaintiffs rely on a District Court of Appeal for the Fourth District of Florida opinion for the proposition that a duty to preserve evidence arises when litigation is anticipated. In *St. Mary's Hospital, Inc. v. Brinson,* the Brinson's daughter was admitted to St. Mary's Hospital for outpatient surgery using general anesthesia. *See St. Mary's Hospital, Inc. v. Brinson,* 685 So.2d 33, 34 (Fla. 4th DCA 1996). The daughter received large amounts of anesthesia which resulted in heart failure and eventually death. *See id.* Sometime after the daughter's death, St. Mary's returned the vaporizer (used in the anesthesia machine during the daughter's surgery) to the manufacturer. *See id.* The manufacturer then disassembled the vaporizer. *See id.* As a result, the Brinsons sued St. Mary's for spoliation of evidence alleging that "because St. Mary's knew of the potential civil claim against the vaporizer's manufacturer, it had a duty to preserve the evidence." *St. Mary's Hospital, Inc. v. Brinson,* 685 So.2d 33, 34 (Fla. 4th DCA 1996).

■■■ The trial court permitted the Brinsons' claim to proceed to a jury, who returned a $9,000,000 verdict in favor of the Brinsons. *See id.* at 35. In upholding the verdict, the District Court of Appeal for the Fourth District of Florida merely stated that "the trial court did not err" in allowing the Brinsons to proceed on a spoliation claim. *See id.* The court did not provide a specific basis for imposing a duty on St. Mary's. *See id.* It appears that the opinion could have been grounded upon a common law duty to preserve evidence due to the forseeability of future litigation. Since it is questionable as to whether *Brinson* created a common law duty, this Court will not interpret *Brinson* so broadly.[12] Furthermore, the District Court of Appeal for the Third District of Florida rejected the idea that there is a common law duty to preserve evidence absent formal notice (to the alleged spoliator) of an intent to file a lawsuit. *See Pennsylvania Lumberman's Mutual Insurance Co. v. Florida Power and Light Company,* 724 So.2d 629, 630 (Fla. 3rd DCA 1998). Considering that *Brinson* is vague and that *Pennsylvania Lumberman's* is clear, this Court will follow the latter case. Thus, no common law duty to preserve evidence (absent some form of notice) currently exists in Florida law.

Plaintiffs also rely on another Fourth District case to argue that a duty to preserve evidence can arise before the filing of a civil action. *See Hagopian v. Publix Supermarkets, Inc.,* 788 So.2d 1088 (Fla. 4th DCA 2001). In April 1991, Ms. Hagopian was injured while shopping at a Publix supermarket when a soda bottle exploded off the shelf. *See id.* at 1089. The store manager not only filled out an accident report, but he also collected the bottle fragments and placed them in storage. *See id.* Ms. Hagopian requested a copy of the incident report, but the manager refused. *See id.* In July 1991, Ms. Hagopian's attorney wrote a letter to Publix notifying the company of his client's claim, but the attorney did not request that Publix save the broken bottle. *See id.* Within several months, the Publix store in ques-

---

12. One commentator examined the record in *Brinson,* and he discovered that, at both the trial and appellate levels, the Brinsons' spoliation claim was based on a statutory and administrative duty of St. Mary's to preserve the anesthesia equipment. *See* Robert D. Peltz, *The Necessity of Redefining Spoliation of Evi-* dence Remedies in Florida, 29 Fla. St. L.Rev. 1289, 1307–1310 (2002) (citing Respondent Brinson's Brief on the Merits at 31–39 (No. 89,889); Petitioner St. Mary's Hospital's Intial Brief on the Merits at 34–40 (No. 94–2130)).

tion closed, and the broken soda bottle (that allegedly injured Ms. Hagopian) was discarded. *See id.* Ms. Hagopian filed suit against Coca Cola and Publix in 1994 for strict liability and premises liability. *See id.* In April 1995, Coca Cola requested that Publix produce the actual bottle for inspection by experts, and Publix informed Coca Cola that the bottle had been discarded. *See id.* Ms. Hagopian requested (for the first time) to inspect the bottle in 1997–six years after the accident. *See id.* Upon discovering that Publix had destroyed the essential evidence, Ms. Hagopian amended her complaint to allege a cause of action against Publix for spoliation of evidence. *See id.*

The District Court of Appeal for the Fourth District determined that Publix had a duty to preserve the bottle for use in anticipated litigation. Such duty arose from the preparation of an incident report coupled with a refusal to give a copy to Ms. Hagopian based on work product grounds. *See id.* at 1090. According to the court, those two facts evidenced Publix's anticipation of litigation, which made preserving the instrumentality of the injury a necessity. *See id.* Therefore, the court determined that an adverse party's duty to preserve evidence is created when that party recognizes that an adverse suit is imminent.

The instant case is distinguishable from *Hagopian.* Unlike *Hagopian,* Plaintiffs did not notify Allstate that a products liability claim would someday be filed, and Allstate had no way to recognize that an adverse suit against itself would be imminent. Allstate did express an interest in a subrogation claim against Sears and White; however, Allstate's interest in pursuing a claim for itself does not give rise to a duty to the Plaintiffs. If Plaintiffs would have given Allstate notice, then such notice would have created a duty for Allstate to preserve the causation evidence in anticipation of litigation, especially if Plaintiffs would have specifically told Allstate to preserve everything.[13] In addition, Allstate did not refuse a request by Plaintiffs to turn over the other causation evidence to Plaintiffs citing work product grounds. Quite the contrary, Plaintiffs never requested to inspect or to maintain the other causation evidence. Therefore, since Plaintiffs did not notify Allstate of Plaintiffs intent to file suit, a duty to preserve based on anticipation of litigation did not arise. As a result, Plaintiffs cannot state a claim for negligent spoliation of evidence, and Defendant Allstate's Motion to Dismiss is hereby **GRANTED** as to that claim.

For the reasons stated above, the Court finds that the facts, as presently alleged, have not set forth (1) an intent to disrupt the underlying litigation or (2) a duty to preserve evidence. Accordingly, this case must be **DISMISSED**.

### III. SUMMARY

The Court's ruling in this matter may be summarized as follows, and it is hereby **ORDERED:**

1. Defendant ALLSTATE INSURANCE COMPANY's motion to dismiss (Doc. 7) is **GRANTED**. This action is **DISMISSED**.

---

**13.** An alleged spoliator could have a duty to preserve evidence if the plaintiff had given the alleged spoliator formal notice of plaintiff's intent to file a lawsuit. *See Pennsylvania Lumberman's Mutual Insurance Co. v. Florida Power and Light Co.,* 724 So.2d 629, 630 (Fla. 3rd DCA 1998); *See also Brown v. City of Delray Beach,* 652 So.2d 1150, 1153 (Fla. 4th DCA 1995)(stating that a duty to preserve evidence arose due to the special relationship that was created between an individual and a police officer when the officer promised to preserve evidence at the individual's request).

2. In accordance with this Order, the Clerk shall enter judgment only in favor of Defendant ALLSTATE INSURANCE COMPANY.