WELLS, Judge.
 

 Alejandra Cossio appeals from a final judgment claiming the court below erred in precluding her from presenting at trial any witnesses (other than herself) and from introducing any documents. Because we find this sanction not commensurate with the offense for which it was imposed, we reverse.
 

 In 2003, Luis Alejo Arrondo, a California resident, and his aunt Alejandra Cos-sio, a resident of Miami-Dade County and long time Florida real estate agent, formed a partnership, by oral agreement, for the purpose of investing in South Florida real estate. The parties decided to be equal owners, agreeing to contribute equally to the partnership’s capital and share equally
 
 *1143
 
 in its profits and losses.
 
 [1]
 

 Between 2003 and 2005, the partnership acquired nine properties, six of which were sold by the time of trial. The partnership did not employ a trained bookkeeper, and, for various reasons, many of its transactions were not recorded. Throughout its duration, the partnership had no positive cash flow, operating only from the capital supplied by the partners and loans made to the partnership. The partners commingled their personal accounts with the partnership account and personal loans were made between the partners and to the partnership.
 

 The partners communicated by phone, with Cossio administering the partnership until mid-2005, when Arrondo relocated to Miami. At that time, Arrondo became more involved and by his account, discovered that he had contributed considerably more capital than Cossio and that Cossio had been keeping what he considered partnership commissions.
 

 In 2007, Arrondo filed suit against Cos-sio to dissolve the partnership and appoint a receiver. He claimed that he had advanced more monies and thus sought more than half of the partnership proceeds; also he argued that Cossio had taken unauthorized commissions and disbursements. He later amended his complaint to add a claim for breach of an oral agreement by Cossio to pay back a personal loan. Cossio counterclaimed for equitable accounting, breach of fiduciary duty, and constructive fraud, arguing that Arrondo misappropriated partnership funds.
 

 When Cossio’s counsel was listed as a witness, he withdrew, and on October 28, 2009, Cossio retained new counsel, David Abrams. On December 8, 2009, the trial court issued an order requiring the parties to submit by January 8, 2009, a joint pretrial notebook, which among other things was to list each party’s witnesses and exhibits. On that date, Arrondo moved, on an emergency basis, for leave to file a unilateral pretrial notebook claiming that he had been unable to obtain Abrams’ cooperation. Abrams filed no pretrial materials on Cossio’s behalf. Abrams subsequently was sanctioned for this failure and fined $250. The trial court also sanctioned Cossio, precluding her from calling any witnesses other than herself and those listed by Arrondo and precluding her from introducing any exhibits into evidence.
 

 At the February 8, 2009 trial which followed,
 
 [2]
 
 Arrondo testified and also called Ricardo Gonzalez (Cossio’s former attorney), Mayra Arrondo (Arrondo’s sister), Ernesto Pinero (the partnership’s bookkeeper), and forensic accountant Maria Yip as witnesses. Pursuant to the trial court’s order, only Cossio testified on her own behalf. Based on the testimony from these witnesses, the court below dissolved the partnership and ordered a wind up.
 
 *1144
 
 In doing so it also found that Cossio was entitled to her commissions, but in accordance with Arrondo’s expert’s calculations, it concluded that the partnership owed $324,378 to Arrondo to repay him for his excess contributions and that Cossio owed $55,768 to Arrondo for a loan that he had made to her.
 

 Cossio appeals from that judgment claiming that the court below erred not only for sanctioning her for the behavior of her attorney, but also for imposing a sanction that far outweighed the wrongdoing at issue. We agree and reverse because a litigant should not be punished for failures of counsel and because sanctions imposed for failure to comply with an order such as that involved here should be commensurate with the wrongdoing:
 

 When a party fails to comply with an order, the trial court has a broad spectrum of sanctions to impose, although the sanction chosen must be commensurate with the offense.
 
 See St. Mary’s Hosp., Inc. v. Brinson,
 
 685 So.2d 33, 35 (Fla. 4th DCA 1996). Although striking a party’s pleadings is the most severe sanction, it is appropriate where the offending conduct is flagrant, willful or persistent.
 
 See id. “A
 
 deliberate and contumacious disregard of the court’s authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness.”
 
 Mercer v. Raine,
 
 443 So.2d 944, 946 (Fla.1983) (citations omitted). Absent evidence of a willful failure to comply or extensive prejudice to the opposition, however, the granting of such an order constitutes an abuse of discretion.
 
 See Clark v. Lake City Police Dep’t,
 
 723 So.2d 901, 902 (Fla. 1st DCA 1999). It also has been found to be an abuse of discretion to strike pleadings where a litigant is punished for the failure of counsel, or where there is only a single failure to comply which did not result in extreme prejudice to the other side.
 
 See id.
 

 Kamhi v. Waterview Towers Condo. Ass’n,
 
 793 So.2d 1033, 1036 (Fla. 4th DCA 2001) (confirming that “[although the trial court in this case did not strike [the party’s] pleadings, its order prohibiting [that party] from presenting evidence and proffering testimony was tantamount to the severest of sanctions”);
 
 see Taylor v. Mazda Motor of Am., Inc.,
 
 934 So.2d 518, 521-22 (Fla. 3d DCA 2005) (confirming that sanctions “must be commensurate with the offense,” and that although a decision to impose sanctions is discretionary, “a litigant should not be punished for fault on the part of ... counsel by such a severe sanction as striking ... witnesses for noncompliance”);
 
 Progressive Consumers Ins. Co. v. Deco Natural Stone, Inc.,
 
 827 So.2d 336, 336-37 (Fla. 3d DCA 2002) (confirming that imposing a punishment “far out of proportion to the magnitude of the alleged offense” constitutes “a gross and reversible abuse of discretion”).
 

 The record in this case does not show that Cossio was in any manner responsible for her attorney’s non-compliance with the trial court’s pretrial order. Indeed, the order precluding Cossio from calling witnesses and introducing exhibits expressly sanctions Cossio’s attorney for his failure to comply with the court’s pretrial order. It does not suggest any wrongdoing on Cossio’s part as a basis for imposing these sanctions.
 
 [3]
 
 The trial transcript also sug
 
 *1145
 
 gests that Cossio was unaware of her attorney’s derelictions. In fact, when the issue was brought up during her testimony at trial, Cossio appeared to be surprised, stating: “My failure to comply with what? ... I don’t know about the pretrial. If you could enlighten me, I would appreciate it.”
 

 The sanction was one of the harshest sanctions that could have been imposed, effectively preventing Cossio from presenting her case. This was a hotly contested, complicated matter involving segregation of commingled partnership finances. As a consequence of the trial court’s sanction order, Cossio was unable to introduce documentary evidence to support her testimony or to present expert testimony to advance her accounting theory. For example, Cossio claimed that a purportedly unauthorized $100,000 loan from the partnership had been mistakenly deposited into her personal account without her knowledge or consent. She testified that after she learned of the deposit, she had required a “journal entry” to be made showing the movement of these funds to partnership accounts. But because the sanction precluded her from corroborating this testimony with documentary evidence, Arrondo’s counsel was able to argue that her testimony should be stricken as not being the “best evidence.”
 
 [4]
 

 Cossio also testified that her American Express card was not used exclusively for her personal use, but was used to pay some of Arrondo’s personal expenses and many partnership business expenses as well. Thus, it was Cossio’s position that nearly all of the charges which Arrondo’s
 

 expert witness had attributed to her, should have been charged to the partnership. But under the sanction order, Cos-sio was not allowed to introduce documents or expert testimony to support her testimony and theory. This allowed Ar-rondo’s counsel to repeatedly object to Cossio’s testimony as being unsupported by documentary evidence and to argue on closing that Cossio had failed to present sufficient evidence to prove her defenses and counterclaim:
 

 [T]he only thing the defense could muster was the testimony of Ms. Cossio,
 
 who had more than sufficient opportunity to present evidence of a competent nature by her retained professionals, and she didn’t;
 
 so all of a sudden, we are now backtracking and trying to account for all of these things that she’d like to get even on so that she can reduce the indebtedness of the partnership to her nephew.
 

 [[Image here]]
 

 The personal accounts — you’ve got one professional testifying, [“]I reconstructed the books, I pored [sic] over the books, I worked with the opposing professional, we came up with a number .... [”]
 

 Ms. Cossio doesn’t have one exhibit to offer ...
 

 THE COURT: Well, I prevented her from having any.
 

 [COUNSEL FOR ARRONDO]:
 
 You did. And she can’t yet it in another way. Your order is your order. And applyiny the rules of evidence ... [tjhey’re not in evidence.
 

 
 *1146
 
 [[Image here]]
 

 I mean, [Cossio’s testimony] was just I didn’t agree with this, I didn’t agree with that, it should have been this way and that way. I’m not sure who could follow that, to be honest with you, Judge.
 
 But it is not competent evidence. It is not what we call substantial competent evidence, and it’s anything but that.
 

 (Emphasis added).
 

 As this court stated in
 
 Taylor,
 
 we are “well aware of the heavy case load carried by trial judges and the need for the courts to move their dockets in the interest of the parties and justice.”
 
 Taylor,
 
 934 So.2d at 522 n. 2. We nonetheless conclude that in this case, there was no evidence that the party sanctioned was guilty of wrongdoing or that the sanction imposed was “commensurate with the offense.”
 
 Id.
 
 at 522.
 

 For these reasons, the final judgment entered below is reversed with this matter remanded for a new trial.
 

 [1]
 

 . According to Cossio, Arrondo initially suggested a 60/40 ownership split with Cossio having the 60% interest, as she would be managing the partnership; however, on her expressed preference, a 50/50 split was agreed to with Cossio keeping the commissions she obtained from the sale of partnership properties. Arrondo maintained that no such agreement as to commissions had been reached.
 

 [2]
 

 . Initially, Cossio retained Jose Vila as her expert accountant and Arrondo retained Maria Yip. Vila and Yip both prepared separate reports reconstructing the partnership's transactions. The reports differed, and before a joint affidavit was executed, Vila withdrew as Cossio’s expert. Cossio then retained Pedro Alberni. Yip and Alberni were unable to reconcile certain disputed numbers and Cos-sio’s attorney filed an emergency verified motion for continuance on February 2, 2009. The trial court heard and denied the motion before the trial on February 3, 2009.
 

 [3]
 

 . The order states only "Defendant may not call any witnesses other than the Defendant herself”; "Defendant may not introduce any documents other than those listed on Plaintiff’s Exhibit List”; and "Mr. Abrams shall make a $250.00 contribution to his favorite charity on or before January 30, 2009 for
 
 *1145
 
 failure to comply with this Court’s sua-sponte order.”
 

 [4]
 

 . Cossio also identified a $20,000 disbursement to Arrondo's sister, a payment she maintained should have been offset from Arrondo’s contributions. She further testified to a number of other payments to relatives that she claimed were being wrongly attributed as disbursements to her for personal use. Again, without documentary support and the testimony of her expert accounting witness, she could not back up this testimony.